**Bernard BERGMAN, Plaintiff,**

v.

**Andrew STEIN et al., Defendants.**

**No. 75 Civ. 119.**

United States District Court, S. D. New York.

Nov. 19, 1975.

290

Thal & Youtt by Steven H. Thal, New York City, Miller, Cassidy, Larroca & Lewin by Nathan Lewin, Washington, D. C., for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of State of N. Y., George D. Zuckerman and Lloyd G. Milliken, Asst. Attys. Gen., for Stein and Cabin.

Floyd Abrams, Eugene R. Scheiman, Cahill, Gordon & Reindel, New York City, for John L. Hess.

## MEMORANDUM

STEWART, District Judge:

An action is brought by plaintiff, Bernard Bergman, against Andrew Stein, a member of the New York State Assembly and then Chairman of the Temporary State Commission on Living Costs and the Economy (the "Temporary Commission"), William D. Cabin, then Assistant New York State Welfare Inspector General, and John Hess, a reporter employed by *The New York Times*. Bergman alleges that defendants conspired together to inflame public opinion against him so as to force public officials to proceed against him in civil and criminal actions and to prejudice future jurors and judges who might hear his case. Bergman claims that the actions of defendants violated his First, Fourth, Fifth, Sixth, and Fourteenth Amendment Rights and are thus actionable under 42 U.S.C. §§ 1983 and 1985. Invoking the court's jurisdiction under 28 U.S.C. §§ 1331 and 1343, plaintiff seeks permanent injunctive relief restraining defendants from unreasonable interference with his civil rights, a declaratory judgment of his rights, compensatory damages of $500,000.00 and punitive damages of $500,000.00, as well as costs and attorneys fees. A request for preliminary injunctive relief was withdrawn shortly after the complaint was filed.

Defendants have all moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure; plaintiff's motion for expedited discovery was opposed by defendant Hess, who sought to stay discovery pending the disposition of this motion to dismiss. Discovery was stayed on February 6, 1975.

Bernard Bergman owns and operates nursing homes in New York. During the course of investigations by the press and by legislative bodies into the conditions of housing and care for the elderly, Bergman's activities came under public scrutiny. His name featured prominently in a series of articles, written by defendant Hess, which appeared in *The New York Times*, commencing in August of 1974. Bergman's activities were also the subject of investigations by the Temporary Commission[1] chaired by defendant Stein and by defendant Cabin[2] of the Office of the State Welfare Inspector General. Much public attention was focused upon what has been described as the

" . . . intolerable abuse of service, massive profiteering, administrative inadequacy, legislative deficiency and political impropriety . . ."

which permeates the nursing-home industry.[3] The Temporary Commission issued its "Report on Nursing Homes and Health Related Facilities in New York State" in April of 1975. New York State investigations continued under Charles Hynes, a special prosecutor, and Morris Abrams, Chairman of the Moreland Commission on Nursing Homes. Federal investigations of nursing home conditions are also on-going.

On August 5, 1975, Bergman and others were indicted in the United States District Court for the Southern District of New York and in the Supreme Court for New York County on charges of income tax fraud, filing false statements, and conspiracy. Bergman pleaded not guilty later that month. The federal prosecution has been stayed pending the termination of the state proceedings. A trial in state court is to begin in December of 1975. The media coverage of the

1. The Temporary Commission terminated its activities on March 31, 1975.

2. Cabin has left that office and is now the Executive Secretary of the Board of Public Disclosure of the New York State Department of State.

3. Report of New York's Secretary of State Mario Cuomo to Gov. Hugh Carey, quoted in Abrams' Affidavit in Opposition to Motion for Expedited Discovery at p. 4.

above-described events has frequently highlighted Bergman's involvement with practices of nursing-home operations which have been criticized.[4]

Bergman contends that defendants Stein and Cabin, acting under color of state law, conspired with defendant Hess, as well as with other unknown individuals, to initiate much of the federal and state investigations of him, to secure his indictment and to destroy his business and his personal reputation. Bergman alleges that Stein usurped the lawful function of the Temporary Commission and used it as the vehicle for harassment of Bergman and for the personal gain of Stein, that Cabin joined Stein by illegally using the Welfare Inspector General's Office to focus attention on Bergman, and that together they leaked confidential information to the press. Bergman contends that the resulting "barrage of unfair, inaccurate, maliciously false and prejudicial reports" [Complaint, ¶ 9(c)] led to his being singled out for public scorn and to the "stampeding" of law enforcement officials to bring criminal charges against him. Plaintiff further alleges that the conspiracy of the defendants, which purportedly caused the massive publicity, has

1) led many, who would normally associate with him, including attorneys and elected officials, to refrain from doing so, thus depriving him of his right of free association, his right to petition government, and his right to counsel,

2) has denied him of his right to an impartial review of the facts by judges and jurors,

3) has deprived him of his right to practice the business of his choice,

4) has deprived him of his right to privacy, and

5) has subjected him to unreasonable searches and seizures.

The first matter which the court must consider in deciding the present motion to dismiss is whether its jurisdiction has been properly invoked. Defendants first contend that plaintiff has failed to meet the Article III requirement of the existence of a case or controversy because the harm alleged by the plaintiff is only speculative and conjectural. Relying upon the Supreme Court's recent discussion of the need for a plaintiff to show direct and real injury in *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L. Ed.2d 674 (1974), defendants contend that plaintiff has not demonstrated that personal injury has occurred. See also *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

In *O'Shea v. Littleton,* nineteen plaintiffs had alleged that law enforcement officials of Alexander County, Illinois engaged in selective and racially discriminatory enforcement of criminal laws. The Court held that plaintiffs had failed to show that they had sustained direct injury but rather had complained of generalized illegal conduct in the past and of potentially illegal conduct in the future. In contrast, here Bergman's complaint alleges that he himself was the target of unlawful acts which have lead to deprivations of his constitutional rights; he offers details as to what those acts were [See *e. g.* Complaint ¶ ¶ 10, 11, 20], and what specific injuries flowed; finally, he has been indicted by both federal and state officials; the argument that his injury is only "conjectural" cannot be maintained.

 Although some of Bergman's complaint states claims sufficiently ripe to adjudicate, plaintiff's allegations concerning the deprivation of his right to a fair trial cannot be heard for they do fall within the realm of speculative injury which the court may not consider. While a claim may be heard under 42 U.S.C. § 1983 seeking damages for denial of civil rights on the grounds that inflammatory statements or actions by an individual prejudiced the claimant's right to a fair trial, [See *e. g., Rosenberg v. Martin,* 478 F.2d 520 (2d Cir.

---

4. See Appendix to Berman's motion to dismiss his New York State court indictment, submitted also to this court.

1973), *cert. denied,* 414 U.S. 872, 94 S. Ct. 102, 38 L.Ed.2d 90 (1973)], it is incumbent upon such a claimant to show that the § 1983 defendant did *in fact* impinge upon the trial so as to work prejudice. *Rosenberg v. Martin,* 478 F. 2d at 525. Here, Bergman alleges that the publicity generated by defendants will cause judge and jurors to be prejudiced. However, Bergman has not yet been tried; there can be no evidence of adverse effect of publicity on a trial, nor is there any reason to presume that any future trial will not comport with the constitutional requirements of fairness.

If and when plaintiff objects to the setting in which he is tried, or to the conduct of parties which affect such trial, he may raise objections with the trial court and, if necessary, on appeal or by writ of habeas corpus. See, *e. g. Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) and *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965).[5] It is well established that the responsibility for the conduct of a trial lies with the trial judge. Measures to preserve fair trials, despite the evocative publicity which frequently surrounds events of great public interest, have often been detailed. A judge may screen jurors to determine the potential prejudicial effect of publicity and may postpone trial to permit sufficient time to elapse so that the impact of publicity may diminish. See, *e. g. United States v. Pfingst,* 477 F.2d 177 (2d Cir. 1973), *cert. denied,* 412 U. S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973). A request for a change of venue may also be made. [See New York Criminal Procedure Law § 230.20].

▅ Therefore, plaintiff's claims as to a deprivation of his right to a fair trial are dismissed as too speculative for adjudication. Further, to the extent plaintiff attempts to hold defendants liable for allegedly discriminatory enforcement of the laws, such claims are also dismissed. None of the defendants here, a legislator, an official in the Office of Welfare Inspector General and a reporter, have the power to bring indictments or to enforce the laws. While allegations of discrimination in prosecution can be heard both as affirmative challenges under 42 U.S.C. § 1983 [See, *e. g. Shaw v. Garrison,* 467 F.2d 113 (5th Cir. 1971) *cert. denied,* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972)] and as defenses to criminal prosecutions [See, *e. g. Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944) and *United States v. Falk,* 479 F.2d 616 (7th Cir. 1973)], such claims cannot be brought against these defendants. See *Everett v. City of Chester,* 391 F.Supp. 26, 28 (E.D.Pa.1975).

▅ Before proceeding to discuss plaintiff's other allegations, we note that the fact of plaintiff's indictment, which strengthens plaintiff's allegation that he may have been injured, raises questions for the court about the propriety of adjudicating claims of a party who is presently a defendant before a state court. See *O'Shea v. Littleton, supra,* 414 U.S. at 496, 94 S.Ct. 669, 38 L.Ed.2d 674, citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). However, the present case is distinguishable from the *Younger* situation because here plaintiff does not seek to enjoin an on-going state proceeding but seeks damages, injunctive, and declaratory relief against defendants who are not participants in the state court proceedings. Whatever relief we might accord plaintiff (on grounds unrelated to the due process claims already dismissed) would not affect or disrupt New York State's administration of its criminal laws; none of the interests which the comity doctrine of *Younger* seeks to protect are injured by our adjudicating the claims remaining before us.[6]

---

5. Plaintiff may at that time bring a civil rights suit. *Rosenberg v. Martin, supra.*

6. Defendants have also urged that the court abstain from deciding this case. Abstention

■ We turn now to defendants' claim that plaintiff has not stated a cause of action under 42 U.S.C. § 1985. Plaintiff relies upon both § 1985(2) and § 1985(3).[7] In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held that § 1985(3) did not apply to all tortious activity but only to conspiracies which deprived persons of equal protection of the laws. To state a claim under § 1985(3), *Griffin v. Breckenridge* requires that the complaint allege class-based or racially discriminatory "animus behind the conspirators' action." 403 U.S. at 102, 91 S.Ct. 1790. As plaintiff's claim here rests on the allegation that defendants singled him out as the object of their conspiracy but does not suggest defendants were motivated to act because of class-based or racial discrimination, plaintiff's claim under § 1985(3) must fail. See also *Raitport v. Chase Manhattan Capital Corp.*, 388 F. Supp. 1095 (S.D.N.Y.1975); *Barrett v. United Hospital*, 376 F.Supp. 791 (S.D. N.Y.1974), *aff'd without opinion*, 506 F.2d 1395 (2d Cir. 1974), and *Lopez v. Arrowhead Ranchers*, 523 F.2d 924 (9th Cir., 1975).

Plaintiff's claim under 1985(2) also cannot be maintained. Unlike § 1985(3), the Supreme Court has not yet construed § 1985(2) to require class-based or racial discrimination. However, many lower courts have concluded that it, like § 1985(3), requires such allegations. See, *e. g. Hahn v. Sargent*, 388 F.Supp. 445 (D.Mass.1975); *Johnston v. N.B.C., Inc.*, 356 F.Supp. 904 (E.D.N.Y.1973) and *McIntosh v. Garofalo*, 367 F.Supp. 501 (W.D.Pa.1973). Plaintiff argues that racial discrimination is not essential to a § 1985(2) claim and turns the court's attention to *Mullarkey v. Borglum,* 323 F.Supp. 1218 (S. D.N.Y.1970). The court in *Mullarkey* found that the allegations of a complaint by tenants that a landlord had instituted eviction proceedings against them in retaliation for their organizing activities stated a claim under § 1985(2). Allegedly, the landlord defendant had caused criminal summonses to be issued against plaintiff's witnesses in an attempt to deprive her of equal protection of the law and of the due process guarantee to have witnesses in her own behalf. There, as here, no allegation of racial discrimination was made.

■■ We approach § 1985(2) by analyzing each of its two clauses separately. The first clause states that a party has a cause of action

"[i]f two or more persons in any State or Territory· conspire to deter, by force, intimidation, or threat, any

---

is generally not favored in actions brought under 42 U.S.C. § 1983. *Mayor of Philadelphia v. Educational Equality League*, 415 U. S. 605, 628, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974). Further, the present case does not involve the type of questions generally appropriate for abstention, and we decline to do so. See also *Brown v. Bronstein*, 389 F. Supp. 1328 (S.D.N.Y.1975).

7. § 1985(3) provides a cause of action:
"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the law; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grant or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; . . . the party so injured . . . may have an action . . . against . . . the conspirators."

It has been interpreted, (in dictum) that this clause, in contrast to § 1985(3), does not include a requirement that such persons conspiring intended to deprive the plaintiff of equal protection of the laws. See *Shaw v. Garrison*, 391 F. Supp. 1353, 1370 (E.D.La.1975). We agree. However, plaintiff here has not alleged that defendants acted to deter or injure witnesses because of their testimony before courts or to harm grand jurors. Thus, the first clause of § 1985(2) has no application to the case at bar and cannot be the basis of plaintiff's cause of action.

The second clause of § 1985(2) provides a cause of action:

". . . if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protections of the laws."

This section does require that some form of discrimination be intended so as to deprive this plaintiff of equal protection of the law. Bergman's complaint cannot be maintained under this clause for two reasons. First, Bergman claims that defendants conspired to subject him to public scorn and consequently deprived him of his rights to a fair trial, privacy, association, freedom from search and seizure, counsel, and practicing the profession of his choice. [Complaint ¶ 34]. He does not allege that defendants acted with invidiously discriminatory motives; even if class-based discrimination is not needed for a cause of action under this clause, a claim of intent to deny equal protection is required. Bergman's complaint sounds in the First, Fourth, Sixth Amendments and in the Fourteenth Amendment due process clause but does not state an equal protection claim and thus cannot be brought under this clause. Finally, to the extent that Bergman attempts to raise, as equal protection claims, issues about the course of justice in a state court, we have already determined that that claim is not ripe.

The other cause of action upon which plaintiff bases his claim is 42 U.S.C. § 1983.[8] Defendants contend that plaintiff's complaint does not contain the elements required under a § 1983 claim of conspiracy to maintain his cause of action. In order to state a cause of action under § 1983, it must be demonstrated that defendants acted under color of state law and that such action deprived plaintiff of rights, privileges, and immunities secured by the Constitution and the laws of the United States. *Powell v. Workmen's Compensation Board of State of New York*, 327 F.2d 131 (2d Cir. 1964); *McIntosh v. Garofalo*, 367 F.Supp. 501 (W.D.Pa. 1973). Further, conspiracy allegations

8. 42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

must be supported by more than vague and conclusory statements. The plaintiff must state, with some degree of particularity, the overt acts engaged in by defendants which reasonably relate to the claimed conspiracy. *Powell v. Workmen's Comp., supra* at 137.

 Here, two of the three defendants are state officials; there is thus a sufficient showing as to them of action under "color of state law" so as to meet that requirement of § 1983. Defendant Hess, a reporter, is a private individual. Private persons may be defendants in § 1983 suits if it can be shown that they conspired with state officials to deprive persons of federal rights. *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mullarkey v. Borglum,* 323 F.Supp. 1218 (S.D.N.Y.1970). Such participation must, of course, be wilful. *United States v. Price, supra; Stambler v. Dillon,* 302 F.Supp. 1250 (S.D.N.Y. 1969). Thus, if the complaint has sufficiently made out its conspiracy charge, Hess remains a defendant.[9]

 The facts in the complaint, read in a light most favorable to plaintiff,[10] are alleged sufficiently so as to raise the possibility that a conspiracy could be proven. Unlike the complaint found insufficient in *Powell v. Workmen's Compensation Board, supra,* here plaintiff has given details of both the allegedly unlawful means utilized by defendants and their malicious intent. The complaint alleges defendants conspired to misuse a legislative investigation, a state office, and the media so as to harass plaintiff, conspired to disseminate inflammatory information about

him, and to subject him to public scorn. Whether such conduct did occur is not before us on the motion to dismiss. Whether such conduct, if true, would deprive plaintiff of rights protected by the Constitution and laws of the United States is what we must next determine.

 Each right allegedly infringed upon must be considered individually. As we have already dismissed the claim of infringement of due process rights, we turn now to the claim of infringement of the right of privacy. Allegedly, Bergman is deprived of his right of privacy because he, his family, and business associates have become the focus of legal and media investigations. However, the right of privacy does not protect an individual from the dissemination of information in the public record. *Cox Broadcasting Corp. v. Cohn,* 420 U. S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). To the extent Bergman accuses defendants of reporting and publicizing information already in the public domain, his claim fails.

 Bergman also alleges that dissemination of information not of public record but relating to his business activities violated his right of privacy. Bergman does not allege that information relating to his personal habits or family life was disclosed. Thus, the issue before us is not whether the state may ever define a zone of privacy which is free from public disclosure, but whether Bergman may claim that the right of privacy protects him from publicity about or related to his business dealings. *Cox Broadcasting Corp. v. Cohn,* 420 U.S. at 491, 95 S.Ct. 1029. Bergman was engaged in operating nursing homes which are institutions about which the public has a right to be

---

9. If it is determined that the state officials are absolutely shielded by their immunities from suit, discussed infra at p. 298 then the § 1983 claim against Hess is defeated as well, for there can be no showing of state action. *Reilly v. Doyle,* 483 F.2d 123 (2d Cir. 1973); *Sykes v. California,* 497 F.2d 197 (9th Cir. 1974); *McIntosh v. Garofalo, supra.*

10. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972), citing *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

informed; in addition, his businesses are funded by state and federal monies. We believe that such activities are issues of public concern and as such cannot be shielded from public discussion, controversy, or criticism. This is a case similar to *Rosenbloom v. Metromedia*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1974), in which the Supreme Court concluded that broadcasts describing the confiscation of allegedly obscene magazines from a businessperson were protected by the First Amendment because the matter involved was one of "public or general concern." 403 U.S at 44, 91 S.Ct. 1811.[11] See also *Associated Press v. Walker*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) and *Garrison v. Louisiana*, 379 U.S. 64, 77, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Compare *Rosenberg v. Martin*, 478 F.2d 520 (2d Cir. 1973) *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Fifth Avenue Peace Parade Committee v. Gray*, 480 F.2d 326 (2d Cir. 1973), *cert. denied*, 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974), and *Jaffess v. Secretary, Dep't of Health, Ed. and Welfare*, 393 F.Supp. 626 (S.D.N.Y.1975); *Cf. Roe v. Ingraham*, 480 F.2d 102 (2d Cir. 1973).

Plaintiff next alleges a deprivation of his First Amendment rights of association and his right to petition for redress, purportedly denied because the publicity surrounding plaintiff's acts lead all to fear scandal and thus to avoid interaction with him. This allegation fails because it is vague and conclusory and not supported by facts. No detail is pleaded which indicates what individuals declined association or how defendants could be responsible for the actions of unnamed and unknown persons.[12] Similarly, plaintiff's claims of infringement of his Sixth Amendment right to counsel and his Fifth Amendment right to practice the profession of his choice are unsupported by specificity and fail to indicate the requisite link between defend-

11. While plaintiff has not brought an action for libel or defamation, the protection afforded by the First Amendment against claims of libel offers an analogous situation. Where a person is a figure of public interest, it has been determined that the public's right to know outweighs the interest of the individual who seeks protection of reputation. *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1963). See also *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). Thus, in order for a public official, public figure, or private person involved in a matter of public interest to recover damages in a suit for defamatory falsehood relating to conduct of public concern, it must be proven that a statement was made with actual malice—with knowledge that it was false or with reckless disregard for truth. *New York Times v. Sullivan*, 376 U.S. 279–280, 84 S.Ct. 710; *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); *Time Inc. v. Hill, supra*; see also *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); *Cf. Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974). The rule reflects the national commitment to the "principle that debate on public issues should be uninhibited, robust, and wide-open." *Rosenbloom, supra*, 403 U.S. at 43, 91 S.Ct. [1811] at 1819 (citation omitted) The application of the rule to

"those who, by reason of the notoriety of their achievements or by the vigor and success with which they seek the public's attention, are properly classed as public figures" was reaffirmed in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 94 S.Ct. 2997, 3008, 41 L.Ed.2d 789 (1974).

We note further that it is undisputed that Bergman himself is an individual of "general fame or notoriety in the community, and pervasive involvement in the affairs of society." *Gertz v. Robert Welch, Inc.*, 418 U.S. at 352, 94 S.Ct. at 3013. As such, we conclude that he is a public figure, a person of power and influence, who, by having assumed a special prominence in the affairs of society, has invited "attention and comment." *Gertz v. Robert Welch, Inc., supra*, at 345, 94 S.Ct. 2997.

12. Plaintiff's complaint states only that "[P]laintiff's business associates, attorneys, elected representatives and other persons have been singled out for publicity and unfounded allegations and innuendoes. Defendants STEIN and HESS have unlawfully and under color of State law directed their campaign to destroy plaintiff against those persons plaintiff has lawfully associated with, including legal counsel and elected representatives, thereby depriving plaintiff of his right to free association, right to petition government and right to counsel." ¶ 33.

**298**

ants' conduct and plaintiff's alleged deprivation.

Plaintiff's remaining constitutional claim is based upon the alleged conspiracy of the three defendants to violate his Fourth Amendment rights. Plaintiff alleges that defendant Stein misused the powers of the Temporary Commission [which purportedly was only created to make recommendations "pertaining to inflation and the energy crisis" (Complaint ¶ 9(a)] by focusing on nursing homes in New York and on the activities of Bergman for Stein's personal gain. Plaintiff also claims that Cabin misused the investigatory and subpoena powers of his office to deprive plaintiff of "constitutionally protected rights." Complaint ¶ 9(b). Plaintiff alleges that these defendants' abuse of their authority to issue subpoenas was motivated by their intent to make public disclosure of subpoenaed information (Complaint ¶ 19) and has led to the denial of his right to be "free of unreasonable searches, seizures and harassment." (Complaint ¶ 34(d)).

▮ While the allegations outlined above verge upon conclusory statements insufficient to state a cause of action under § 1983, reading the complaint in a light most favorable to plaintiff, a Fourth Amendment claim can be gleaned. If the investigatory bodies did reach beyond their powers to conduct an inquiry for the purpose of harassment of an individual, a § 1983 action for protection of constitutional rights may be maintained. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Freeman and Bass, P.A. v. State of New Jersey Commission of Investigation*, 486 F.2d 176 (3d Cir. 1973).

However, defendants Stein and Cabin have responded that they are immune from questioning about the issuance of subpoenas because such actions were legitimate exercises of their legislative and official authority. As the scope of immunities for legislators and executive officials is not coincident, it is necessary to analyze Stein and Cabin's defenses individually. Compare *Eastland v. United States Servicemen's Fund* ("Eastland v. U.S.S.F."), 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975) with *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) and *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

▮ Stein maintains that the investigation pursued by the Temporary Commission was fully within its powers as granted by the New York Legislature. We agree. The Temporary Commission was created in 1973 to "investigate and report to the governor and the legislature on all matters relating to the rising cost of living and the energy crisis . . . ." § 4, Ch. 1053, Laws of New York (1973). The Temporary Commission was granted the power to "undertake any investigations, studies, inquiries, or analyses as it may deem relevant . . . ", "conduct private and public hearings . . .", "subpoena witnesses . . . and require the production of any books, records, documents or other evidence it may deem relevant . . . ." § 5, Ch. 1053. The costs of care for the elderly is a matter of public concern relating to the rising cost of living. New York State has expended increasingly large amounts of money to help fund that care.[13] Bergman owned and operated nursing homes which were recipients of state funds. His business interests thus fall within the realm of activities which the Temporary Commission could, under its legislative authorization, properly investigate. Compare *Gojack v. United States*, 384 U.S. 702, 86 S.Ct. 1689, 16 L.Ed.2d 870 (1966). Here the subpoena was within the jurisdiction of the body which issued it, was seeking information reasonably relevant to the inquiry, and was not alleged to be overly broad in its terms or excessive. *Pollard v. Roberts*, 393 U.S. 14, 89 S.Ct. 47, 21 L.Ed.2d 14 (1968), affirming, 283 F.Supp. 248 (E.D.N.Ark. 1968). Consequently, its issuance was

---

13. Defendants Stein and Cabin's Memorandum in Support of their Motion to Dismiss at p. 25.

the lawful exercise of legitimate legislative power. Legislative immunity bars any further inquiry into Stein's liability for his actions as chairman of the Temporary Commission. *Eastland v. United States Servicemen's Fund*, 421 U.S. at 503, 95 S.Ct. 1813; *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L. Ed. 1019 (1951).

■ Cabin was the Assistant State Welfare Inspector General. That office was created under Chapter 601,[14] Laws of New York (1971), and invested with the duty to "receive and investigate complaints from the public or any other source concerning alleged abuses, suspected frauds, and other violations of the welfare system." Executive Law § 762. Pursuant to the discharge of thta function, the holder of that office was granted the power to investigate and to subpoena witnesses and documents relevant to any such investigation. Bergman's businesses were the recipients of state welfare funds. However, Bergman alleges that the investigation was improperly motivated. The immunity accorded an official is not absolute. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Rather, it is incumbent upon a court to look to the scope of discretion and responsibilities attendant to an office, and to the circumstances surrounding the action upon which immunity is claimed, to determine if executive immunity attaches. *Scheuer v. Rhodes*, 416 U.S. at 248, 94 S.Ct. 1683. As plaintiff has alleged that Cabin acted beyond the scope of his duties, we cannot conclude, without any evidence, that such actions are immune. We order that an evidentiary hearing be held to determine if the investigation of Bergman by Cabin may be accorded immunity. See *Scheuer v. Rhodes, supra; Fidtler v. Rundle*, 497 F.2d 794 (3d Cir.

1974) and *Barr v. Matteo, supra*. See also *Wood v. Strickland, supra*.

■ We turn now to defendant Hess. As noted earlier, if a state official remains a defendant, Hess has potential liability if a conspiracy can be proven. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L. Ed.2d 142 (1970). However, Hess contends that even if Bergman has a claim actionable under 42 U.S.C. § 1983, the action is barred against him by the First Amendment. To the extent that plaintiff still seeks to have any writings of Hess enjoined from future publication, such relief would be an unconstitutional prior restraint and cannot be ordered. None of the allegations of plaintiff as to the injury to his business interests and privacy meet the heavy burden of justification required for the imposition of a prior restraint. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed. 2d 1 (1971). See also *Miami Herald Publishing Co., Division of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *New York Times v. United States*, 403 U.S. 713 (1971), and *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L. Ed.2d 584 (1963).

■ Similarly, plaintiff's claim for damages against Hess premised upon the publication of misleading reports are barred under the First Amendment. Plaintiff does not allege that he has been libeled; rather, he claims deprivation of constitutional rights because of publication of information about him. As we noted earlier in our discussion of plaintiff's allegations of intrusion upon his right of privacy, plaintiff and his business are matters of public interest and he can claim no protection from media coverage of his business activities which were, in part, funded by public

---

14. Ch. 601 has since been repealed, effective July 1, 1975. As of this date, an Office of Welfare Inspector General was created in the department of audit and control. Ch. 219, Laws of New York (1975).

**300**

monies. No publication of personal matters, arguably protected by the right of privacy, is alleged. *Cox Broadcasting Co. v. Cohn, supra.*

The only remaining claim against Hess relates to the alleged conspiracy between Hess, Cabin and Stein to misuse Cabin's official powers. The court cannot consider Hess' role until a determination of the immunity defense raised by Cabin is made. Consequently, plaintiff's complaint against Hess is dismissed, except as to the alleged conspiracy claim, based on the Fourth Amendment.

In summary, we have dismissed plaintiff's due process claims as premature and precluded by the doctrine of comity. We have dismissed plaintiff's claims under 42 U.S.C. § 1985(2) and (3) for failure to state a claim upon which relief can be granted. Plaintiff's claims arising under 42 U.S.C. § 1983, in so far as they relate to deprivation of constitutional rights protected under the First, Fifth, Sixth, and Fourteenth Amendments are dismissed because the allegations in the complaint are insufficient to show that constitutional protections are at issue and that constitutional deprivations have occurred. Plaintiff's claim of infringement of Fourth Amendment rights is dismissed against defendant Stein in so far as it relates to his legislative activity because suit is barred by legislative immunity. Plaintiff's claim for injunctive relief against Hess is dismissed as barred by the First Amendment. Plaintiff's Fourth Amendment claim against Cabin remains; a hearing must be held to determine the scope of Cabin's immunity from suit. The claims against defendants Stein and Hess, as co-conspirators with Cabin to violate Bergman's Fourth Amendment rights by abuse of Cabin's office, remain pending the hearing on Cabin's immunity.

So ordered.