**COLEGIO PUERTORRIQUEÑO DE NIÑAS, LICEO PONCEÑO, INC., et al., Plaintiffs,**

v.

**Carmen T. PESQUERA DE BUSQUETS, Secretary to Department of Consumer Affairs of Commonwealth of Puerto Rico, Defendant.**

Civ. No. 78–2103.

United States District Court, D. Puerto Rico.

Feb. 6, 1979.

Luis Roberto Piñero, Hato Rey, P. R., for plaintiffs.

José M. Herrero, Secretary of Justice, San Juan, P. R., for defendant.

## OPINION AND ORDER

TORRUELLA, District Judge.

This is an action seeking declaratory and injunctive relief, as well as damages, brought under the provisions of Section 1983 of Title 42, United States Code, and Sections 1331 and 1343 of Title 28, United States Code. The Plaintiffs are eighteen private schools which have been duly licensed or accredited by the Commonwealth Department of Education to operate in Puerto Rico, and a professional organization which assembles over one hundred private schools of all educational levels throughout Puerto Rico. The Defendant is the Secretary of the Department of Consumer Affairs of the Commonwealth of Puerto Rico.

This case presents the same factual background involved in *His Excellency Bishop Ricardo Suriñach, etc. v. Carmen T. Pesquera de Busquets*, 460 F.Supp. 121 (D.C.P.R., 1978). As in that case, the Defendant herein has requested information, documents and books from Plaintiffs concerning the number of students and teachers in the respondent schools, number of classrooms, salaries paid to teachers and academic preparation of teachers, transportation and other services provided to students, scholarships offered and criteria used for awarding scholarships, general information about the sources and funds for the financing of the private schools for the years 1975, 1976 and 1977, cost per student for registration and admission, monthly fees, fees for activities and for permanent improvements, medical insurance, and fees for student evaluations, meals and materials. The inquiry also covered information about the cost of uniforms, cost of books and sale price thereof, and data concerning numbers and salary of employees for three categories of personnel. The request was part of an investigation by the Department of Consumer Affairs into the costs of the private schools operating in Puerto Rico, initiated pursuant to Sections 3, 6 and 14(a) of Act Number 5, enacted by the Legislative Assembly of the Commonwealth of Puerto Rico on April 23, 1973. 3 L.P.R.A. 341 et seq.

Section 3 of the Act, 3 L.P.R.A. 341b, expressly directs the Department to protect the rights of consumers, curb inflationary tendencies and establish a price control system over goods and services. Section 6 of the enabling statute, 3 L.P.R.A. 341e, empowers the agency to issue subpoenas to compel the appearance of witnesses and production of documents and/or information, to inspect records, inventories, documents and physical facilities of persons or entities subject to the provisions of the Act, and to perform all other acts necessary and convenient for the most effective achievement of the purposes of the Act. (Subsections 6(h), (v), (w) and (x)). The administrative faculties of the Department are more specifically delineated in Section 14(a), 3 L.P.R.A. 341m, which enables the Department to engage in all types of studies and investigations on matters affecting consumers. In furtherance of these faculties, the Secretary of the Department is given the authority to, *inter alia*, request all necessary and relevant information and inspect records, inventories, documents and physical facilities of entities under the Agency's jurisdiction; approve all necessary and reasonable rules and regulations and receive testimony and evidence related to consumer-related matters.

Plaintiffs contend that the purpose of Defendant's inquiry is for price fixing of private education in alleged violation of the Due Process Clause of the Fourteenth Amendment, insofar as such price fixing deprivates private schools of their property right of conducting their affairs. Plaintiffs further argue that Defendant's actions have the purpose of provoking the standardization of private education and interfering with the liberty of parents and guardians to select and direct the education of their children. In the second cause of action of the complaint it is asserted that Defendant's action constitutes an invasion of Plaintiffs' privacy rights under the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States.

Our only duty in this case is to determine whether the investigation undertaken by

the Defendant is violative of any constitutionally protected right of those required to respond to the questionnaire. To that inquiry we will now address ourselves.

■ Plaintiffs question the power of the Defendant to regulate the costs of private education in Puerto Rico. Concerning this argument, it is the view of this Court that, as the matter now stands no concrete controversy is presented to us for adjudication. *O'Shea v. Littleton*, 414 U.S. 488, 493–494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The issue is not what type of regulatory action *might* be taken by the Defendant in the future under the authority conferred by statute,[1] but rather what kind of disclosure requirements the Defendant has *in fact* imposed. *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 64, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974). It is black-letter law that "the requiring of information concerning a business is not regulation of that business." *ICC v. Goodrich Transit Co.*, 224 U.S. 194, 211, 32 S.Ct. 436, 440, 56 L.Ed. 729 (1912), and the distinction between both types of official action "is substantial." *United States v. Five Gambling Devices*, 346 U.S. 441, 462–463, 74 S.Ct. 190, 98 L.Ed. 179 (1953).

■ In order to satisfy the threshold requirement imposed by Art. III of the Constitution, those who seek to invoke the power of federal courts must demonstrate that the injury or threat of injury must be both "real and immediate", not "conjectural" or "hypothetical." *Golden v. Zwickler*, 394 U.S. 103, 109–110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). This Plaintiffs have failed to do.

As we stated in *His Excellency Bishop Ricardo Suriñach, etc. v. Carmen T. Pesquera de Busquets*, supra, "the absence of an immediate possibility of actual regulation counsels against our entertaining issues which may be affected by future events of an uncertain nature." See, *United Public Workers of America v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *International Longshoremen's and Warehousemen's Union, Local 37 v. Boyd*, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954).[2]

We therefore conclude that no case or controversy has been presented to us regarding Plaintiffs' allegations of price fixing. We are thus constitutionally prevented from entertaining those claims. *O'Shea v. Littleton*, supra.

We will now consider the second issue presented by the first cause of action, wherein Plaintiffs allege a threat to the liberty of parents to direct the educational upbringing of their children by reason of governmental "standardization" of private education.

The tensions between individual liberty and governmental attempts to achieve homogeneity in the educational context have been presented to the United States Supreme Court in controversies disputing the validity of State statutes that forbade the teaching of foreign languages before the eighth grade, *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) or that required all students to attend public schools. *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). Understandably, the basic postulates of both decisions are that the State has no power to "standardize its children by forcing them to accept instruction from public teachers only." *Id.*, at 535, 45 S.Ct. at 573. or "foster a homogeneous people." *Meyer*, supra, 262 U.S. at 402, 43 S.Ct. 625.[3]

■ The dangers repudiated in those decisions are nowhere apparent from the record in this case. Unlike in *Pierce*, and contrary to the arguments of Plaintiffs, the

---

1. In the answer to the Complaint, the Defendant has denied that the purpose of the inquiry is to limit the fees to be charged for private education.

2. *Suriñach*, supra, n. 9.

3. In *Pierce*, "no question [was] raised concerning the power of the State reasonably to regulate all schools, to inspect, supervise and examine them, their teachers and pupils." 268 U.S. at 534, 45 S.Ct. at 573. What was decisive was the teachers' right to practice their professions and the well recognized rights of parents over their children. *Id.*, at 534–535, 45 S.Ct. 571.

*status quo* presents no imminence of destruction of the right of private schools to exist and to operate. 268 U.S. at 535–536, 45 S.Ct. 571. Moreover, "[T]he preeminent right of parents to direct the [educational] upbringing of their children is not conceivably being subject to governmental curtailment or restriction by the implementation of the inquiry that Defendant purports to conduct." *Suriñach,* supra, at 125. See, *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Norwood v. Harrison,* 413 U.S. 455, 462, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973). Furthermore, there has been no showing that the actions complained of would in any way affect the content and scope of teaching in private schools. See, *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); see also, *Stanley v. Georgia,* 394 U.S. 557, 565–566, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1964).

The foregoing suffices to disprove Plaintiffs' claims of governmental transgression of protected parental and educational liberties. To the extent that Plaintiffs base their challenge on unspecified and uncertain eventualities, the first cause of action also fails to present an actionable controversy, in light of the principles summarized hereinbefore.

At this juncture, we are called upon to decide whether the administrative probe in question here constitutes an invasion of constitutionally protected rights of privacy. The importance of this question compels us to undertake a careful analysis of the various factors involved.

 There is no right of "privacy" as such in the constitution. Hence, the judicially recognized "zones of privacy" emanate from specific and substantive constitutional guarantees. *Paul v. Davis,* 424 U.S. 693, 712–713, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The foundations of privacy rights, which have been termed as "protected rights of personhood", Tribe, *American*

*Constitutional Law,* Ch. 15–3, p. 893 (1978), have thus been located in the First Amendment, *Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); in the "liberty" protected by the due process clauses of the Fifth and Fourteenth Amendments, see, *Roe v. Wade,* 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Meyer v. Nebraska,* supra, 262 U.S. at 399, 43 S.Ct. 625,[4] as well as in the strictures of the Fourth Amendment's guarantees against unreasonable searches and seizures. *Terry v. Ohio,* 392 U.S. 1, 8–9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Katz v. United States,* 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). More characteristically, privacy rights have been described as arising from the "penumbras", *Griswold v. Connecticut,* 381 U.S. 479, 484–485, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) or "shadows", *Whalen v. Roe,* supra, n. 4, of the Bill of Rights.

If "the right of privacy means anything, it is the right of the *individual* . . . to be free from unwarranted governmental intrusion into matters . . . fundamentally affecting a person." *Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1978) (Emphasis in original). Thus, "[o]nly personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty' are included in this guarantee of . . . privacy." *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973) (Emphasis supplied, citation omitted).

 The foregoing does not mean that corporations or other entities which do not possess human individuality do not enjoy privacy rights. See *Grosjean v. American Press Co.,* 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936). However, their sphere of protected privacy is lesser in scope than that of individuals. *Pierce v. Society of Sisters,* supra, 268 U.S. at 535, 45 S.Ct. 571. "[N]either incorporated nor unincorporated associations can plead an unqualified right

---

4. In *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), the Supreme Court reiterated the view set forth in *Roe v. Wade,* supra, that the right of privacy is founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action. 429 U.S. at 598, n. 23, 97 S.Ct. 869.

to conduct their affairs in secret. While they may and should have protection from unlawful demands made in the name of public investigation, corporations can claim no equality with individuals in the enjoyment of a right to privacy." *United States v. Morton Salt Co.*, 338 U.S. 632, at 651–652, 70 S.Ct. 357, at 368, 94 L.Ed. 401 (1950), quoted with approval in *California Bankers Ass'n v. Shultz*, supra, 416 U.S. at 65–66, 94 S.Ct. 1494.

Against this general background, the portent of the relevant court decisions is that informational probes by the government are objectionable when they unduly transgress specific constitutional guarantees. See, *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); (First and Fourteenth Amendments); *De Gregory v. New Hamp. Atty. Gen.*, 383 U.S. 825, 86 S.Ct. 1148, 16 L.Ed.2d 292 (1966), and *Talley v. California*, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) (freedom of expression); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (Fourth Amendment); *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960) and *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (rights of associational freedom), *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969) (procedural due process). In each of these decisions, the right of privacy operated as a ban on the challenged actions only by reason of its being intimately connected to some fundamental constitutional guarantee, see *NAACP v. Alabama*, supra, 357 U.S. at 462, 466, 78 S.Ct. 1163, or when the information is likely to be associated to particular individuals in violation of their liberty interests. See, *Wisconsin v. Constantineau*, 400 U.S. 433, 436–437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); but see, *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). This is consistent with the derivative nature of the right of privacy. *Id.*, at 712–713, 96 S.Ct. 1155 (1976).

Plaintiffs in this case invoke the right of privacy without expounding in a specific fashion the guarantees at stake. Rather, their privacy claims are brought "under the First Amendment, the Fourth and Fifth Amendment, the Bill of Rights, the Ninth Amendment and the Fourteenth Amendment of the Constitution of the United States."

█ It goes without saying that no governmental attempts to "control men's minds", "the moral content of a person's thoughts" or to inhibit the exercise of legitimate expressive or associational rights in violation of the First Amendment are apparent from the requested disclosure presented by this record. *Stanley v. Georgia*, 394 U.S. 557, 565–566, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1964); cf. *NAACP v. Alabama*, supra.[5] On the other hand, Plaintiffs' bare invocation of the Fifth Amendment fails to state a cause of action under that constitutional provision.

*Primo*, the privilege against self-incrimination is not applicable to corporations, *Hale v. Henkel*, 201 U.S. 43, 70, 26 S.Ct. 370, 50 L.Ed. 652 (1906), nor to other collective entities, *Bellis v. United States*, 417 U.S. 85, 87, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *United States v. White*, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). Furthermore, there is no suggestion in the record that Plaintiffs are being compelled to give *testimonial* self-incriminating communications. *Fisher v. United States*, 425 U.S. 391, 409, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

█ As to the Fourth Amendment claim, it must be pointed out that, except for limitations concerning breadth and relevancy, the Fourth Amendment does not ordinarily restrict an administrative subpoena for records or an administrative requirement of reports. *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 195, 66 S.Ct. 494, 90 L.Ed. 614 (1946). The protection against unreasonable searches and seizures is satisfied if the inquiry is within the authority of the agency, the demand is not indefinite

---

**5.** The allegations of Paragraph 8 of the Complaint, which asserts a violation of the religious clauses of the First Amendment have already been considered by us in *Suriñach v. Pesquera*, supra.

and the information sought is reasonably relevant to the administrative endeavor. *United States v. Morton Salt Co.*, supra, 338 U.S. at 651–652, 70 S.Ct. 357. When the circumstances in this case are evaluated in light of these principles, we are compelled to conclude that no Fourth Amendment violation is committed by the Defendant. The questionnaire involved in this case is part of an investigation by the Department of Consumer Affairs into the costs of the private schools operating in Puerto Rico undertaken pursuant to a broad statutory delegation. In this connection, it is not our function to invalidate the investigation merely because we may disagree with its propriety, *Williamson v. Lee Optical Co.*, 348 U.S. 483, 488, 75 S.Ct. 461, 99 L.Ed. 563 (1954), in the absence of a State's abridgment of constitutional rights. *New Orleans v. Dukes*, 427 U.S. 297, 303–304, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Nowhere does it appear that the investigation has not been authorized by the legislative branch, or that the information sought is "plainly incompetent or irrelevant" to the inquiry. This detracts from the asserted constitutional invalidity, on Fourth Amendment grounds, of the actions complained of. *Oklahoma Press Pub. Co. v. Walling*, supra; *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509, 63 S.Ct. 339, 87 L.Ed. 424 (1943); *United States v. Morton Salt Co.*, supra; *United States v. Tivian Laboratories, Inc.*, 589 F.2d 49 (C.A. 1, 1978).[6]

■ The remaining question is whether the investigation sought to be invalidated here is violative of the Fourteenth Amendment's concept of personal liberty and the restrictions upon state action embodied in that provision. *Whalen v. Roe*, supra, 429 U.S. at 598, n. 23, 97 S.Ct. 869; *Roe v. Wade*, supra, 410 U.S. at 153, 93 S.Ct. 705. More precisely, the analysis should be framed in terms of the constitutional contours of governmental powers under the circumstances present in this case. In this connection, the right to privacy is not unqualified, but must be considered against the governmental interests involved in each particular situation. *Roe v. Wade*, supra, at 154, 93 S.Ct. 705.[7]

■ Upon examining the questionnaire in question here, we find that the same does not present a sufficiently specific and direct detriment to the Plaintiffs as would give rise to an actionable claim under the Constitution. The informational disclosure sought by the Defendant cannot be characterized as inimical to any protected interests of secrecy. The queries concerning physical, library and laboratory facilities, number of students and teachers, services and scholarships provided are matters over which the States have traditionally possessed a legitimate interest. *Pierce v. Society of Sisters*, supra, 268 U.S. at 534, 45 S.Ct. 571. Furthermore, those parts of the questionnaire which relate to financial data are not "arbitrary" or "unreasonable." *Whalen v. Roe*, supra, 429 U.S. at 597–598, 97 S.Ct. 869. No authority has been brought to our attention, and we have not found any, which would even suggest that the fees charged to students for educational and other services are constitutionally protected from disclosure, or that the government cannot have knowledge of the salaries paid to the employees of a given institution. As to the sources of financing, the questionnaire does not seek divulgation of any list of donors or specific confidential sources of funds. Rather, the questionnaire inquires about what proportion of the school's budget is derived from enrollment fees, donations and the federal or state governments. There is nothing indicating that this type of probe transgresses the Constitution.

---

6. We must also point out that the actions of the Defendant do not resemble most of the administrative or ' official quests which typically present colorable Fourth Amendment claims. See, e. g. *Marshall v. Barlow's Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

7. State actions which affect in some way individual liberty or privacy will not be struck down simply because they are deemed unnecessary, in the absence of a clear transgression of constitutional guarantees. *Whalen v. Roe*, supra, 429 U.S. at 597, 97 S.Ct. 869.

The scope of the administrative inquiry conducted here does not exceed the bounds of traditional and well recognized administrative powers of factual ascertainment.[8] *United States v. Morton Salt Co.*, supra; *Endicott Johnson Corp. v. Perkins*, supra; *Bergman v. Stein*, 404 F.Supp. 287 (D.C.N.Y.1975); 1 Davis, *Administrative Law Treatise*, Ch. 3 (1958); 3 Mezines, Stein & Gruff, *Administrative Law*, § 19.01, p. 19–3 (1977); "Notes", 35 *Notre Dame Lawyer*, 77 (1959). Moreover, the power of the Legislative Assembly of the Commonwealth of Puerto Rico to so invest an agency with investigatory faculties cannot be doubted. See, *Oklahoma Press Publishing Co. v. Walling*, supra; *Electric Bond and Share Co. v. Securities and Exch. Com'n.*, 303 U.S. 419, 58 S.Ct. 678, 82 L.Ed. 936 (1938), and the strictures of the Due Process Clause are not fully operative in this kind of official action. *Hannah v. Larche*, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), rehearing denied, 364 U.S. 855, 81 S.Ct. 33, 5 L.Ed.2d 79.[9] "Privacy in the sense of freedom to withhold personal financial information from the government or the public has received little constitutional protection." *O'Brien v. DiGrazia*, 544 F.2d 543, 545–546 (C.A. 1, 1976), cert. den. 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223. Under the circumstances of this case, the actions complained of fall short of invading the circumscribed area of protected personal liberties.

The Complaint filed in this case is hereby DISMISSED on the aforementioned grounds. The Clerk of the Court shall enter Judgment accordingly.

IT IS SO ORDERED.

---

8. The decision to investigate or not is not for us to review. *Union Mechling Corp. v. United States*, 185 U.S.App.D.C. 57, 566 F.2d 722 (1977).

9. As we have pointed out hereinbefore, we are not concerned with actual governmental regulation in the economic field.