Charles **AKNIN** and Aknin Corporation, Plaintiffs,

v.

Arthur **PHILLIPS**, Jr., et al., Defendants.

No. 75 Civ. 3231.

United States District Court, S. D. New York.

Nov. 7, 1975.

Butler, Jablow, & Geller, by Stanley Geller, New York City, for plaintiffs.

Zimmer, Fishbach, Hertan & Haberman, by Louis C. Fieland and George Kossoy, New York City, for defendant Sideman.

## MEMORANDUM

BRIEANT, District Judge.

By their complaint, filed July 1, 1975, plaintiffs seek declaratory and injunctive relief and also money damages. Their first pleaded claim "arises under the First, Fifth and Fourteenth Amendments to the Constitution of the United States, and §§ 1983 and 1985 of Title 42, U.S.C." The second claim is pendent, pleaded in reliance upon the Constitution of the State of New York and various New York statutes.

Plaintiff Charles Aknin is President, and together with his wife, shareholder of plaintiff Aknin Corporation, a New York corporation. Defendants Phillips, Gianunzio, Nataro, Natches, De D'Bramo, Mustich, Lifrieri and Forte are officials of the Village of Mamaroneck, Westchester County, New York. Defendants Michael Roth and Edith Sideman are not sued in any official capacity, and Edith Sideman has none, being a housewife and resident of the Village of Mamaroneck. We are told that Roth holds a state office as Chairman of the Liquor Authority, although the complaint does not so allege.

By motion fully submitted on October 22, 1975, defendant Edith Sideman has moved for an order dismissing the complaint as to her pursuant to Rule 12 for failure to state a claim or alternatively, for summary judgment pursuant to Rule 56, F.R.Civ.P.

The complaint, affidavit of plaintiff read in opposition to this motion and filed papers show that plaintiff operated a highly respected French Restaurant, known for many years as "Charles V," located in a converted residence at 5121 East Post Road in the Village of Mamaroneck, that being a through or main artery. Early in 1974, the restaurant closed because of the gasoline shortage, and plaintiffs converted their premises to a "discotheque" which was opened for business in April, 1974 under the name "Zazou." We are told without contradiction that Zazou was an immediate financial success, that because of the nature of the entertainment furnished there, it earned profits at the rate of $175,000.00 per year and attracted a clientele, the majority of whom are said to be "black and hispanic."

Implicit in ¶ 3, et seq. of Mr. Aknin's affidavit is the fact that the discotheque was in full operation in the early hours of the morning. Although located in an area zoned for commercial use, it lies on the borderline of a residential area in

which defendant Sideman lives. Plaintiff tells us that some of the residents of the neighboring residential area backing up to this principal highway in Mamaroneck "took offense at the operation of the discotheque in their neighborhood, and they were particularly troubled by some of the activities of the customers of the discotheque when, in the early hours of the morning, the latter left that establishment." Since we assume that in the early hours of the morning in Mamaroneck, New York the good burghers are sleeping, and readying themselves for their contest with the Penn Central commuter trains on the following day, we assume that this resentment was a natural and reasonable outgrowth of the noise and related activities of the revelers attending the discotheque, and that their ethnicity is of no particular relevance.

The complaint alleges that the defendants, together with those ubiquitous malefactors John Doe, Richard Roe and Thomas Hoe, conspired with each other, and with the Village fathers to take action to "close down plaintiff's discotheque and otherwise deprive plaintiff of rights, privileges and immunities secured to them by the Constitution and laws of the United States;" (Complaint, ¶ 4), that is, to cause the gathering at early hours, of large numbers of noisy and disruptive persons who would be expected to affect the neighborhood tranquility.

It was suggested at the oral argument of this motion, and is taken as true, that defendant Sideman and others approached the Village officials and protested the operations of the discotheque. They did this openly. They held, or caused the Village officials to hold public meetings at which they demanded to know what the officials were doing about the discotheque.

Initially, it appeared that customers of the discotheque were blocking the private driveways of neighbors, and otherwise violating local parking ordinances. Plaintiff Aknin says he leased the A & P Supermarket parking lot for use after store hours, so that this admitted violation would be abated, and thereafter, the defendant Sideman and others signed a petition addressed to the landlord, asking that the landlord (whose local supermarket seeks neighborhood patronage), not assist the operation of the discotheque by permitting it to use the off-street parking facilities in the evening. As might be expected, the A & P heeded its customers.

■ Thereafter, it appeared the conspirators induced officials of the New York State Department of Labor, not sued here, to serve a notice of violation of the Labor Law in respect of fire exits, of which Zazou had an admittedly insufficient number. That Department posted a violation, allowing 30 days for the installation of additional exits. The conspirators persuaded the Village Building Department to issue an order revoking the certificate of occupancy, and directing a closing down of this place of public assembly until the exits were installed as required by the State Labor Department. This was done on the eve of the July 4th weekend, at which time it was admitted that there would probably be a substantial crowd in attendance at the discotheque. For failing to close Zazou pursuant to the Village order, the Village officials caused Aknin to be arrested and charged. Thereafter, following the weekend, he did close until he had complied with the State Labor Department order. He was acquitted. Citizens, however officious they may seem, have a right to urge their officials to enforce the fire laws.

It also appears that the Village of Mamaroneck had a cabaret ordinance restricting the playing of music or dancing after 1:00 A.M. on weekday mornings and after 2:00 A.M. on Sunday and holiday mornings, and also had an antinoise ordinance. These are ancient laws which plaintiffs suggest, and the Court recognizes, were initially conceived during the era of National Prohibition, when "cabarets" and "speakeasies" tended to proliferate on main highways in

Westchester County, producing the same annoyances complained of by Sideman.

In mid-July 1974 plaintiff was convicted of violating these ordinances, and his convictions are now on appeal to the County Court of Westchester County where he is "confident that they will be reversed." (Affidavit of Charles Aknin, ¶ 9).

Plaintiff Aknin asserts (Affidavit, ¶ 9), that the improper and illegal use of these invalid ordinances has forced a closing of the discotheque. This was because, as a practical matter, he was obliged to limit the hours of operation to those set forth in the carbaret ordinance, and closure at such hours does not suit his customers.

It is alleged, and we assume, that Mrs. Sideman, together with her conspirators, persuaded the defendant Village officials to invoke the cabaret ordinance against plaintiffs, and likewise the unnecessary noise ordinance. It is claimed that the Village officials who responded to wishes of their electorate were well aware of the fact that the unnecessary noise ordinance was facially unconstitutional for vagueness, and that enforcement of the cabaret closing hours was selective; saloons having more discreet patrons being allowed to remain open so long as there was no neighborhood outcry.

■ The "blessings of quiet seclusion" have been held to be a permissible goal of local government. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 9, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Mrs. Sideman and her neighbors, Doe, Roe and Hoe enjoy First Amendment rights. They are entitled to speak, and even to speak sharply, to their elected representatives concerning these goals. When they assemble at public hearings and request the local officials to "do something" about the discotheque, it will be presumed that they intend something lawful be done. Village officials are expected to resist any improper suggestions, and avoid use of improper means.

■ If, *arguendo,* the Village officials then do something unlawful [but *Cf. Brault v. Town of Milton,* 527 F.2d 730 (2d Cir. 1975) (*en banc*)], we see no basis for a claim against the citizens who demanded the lawful municipal action. To permit maintenance of this type of civil rights lawsuit against a private individual would under the circumstances and uncontested facts shown in this case, have an unfortunate and unjust chilling effect upon the exercise by members of the public of their First Amendment right to complain about a public nuisance.

There is no contested issue of fact; summary judgment is granted to defendant Sideman only, pursuant to Rule 56, F.R.Civ.P., and the complaint is dismissed as to defendant Sideman and her co-defendants, Doe, Roe and Hoe, only, and the caption of the action is amended to remove their names.

The Court also agrees with the contention advanced by Mrs. Sideman that she should not be held in the case while it takes its course as to the other parties. The burden of litigation and the legal expenses attendant thereon, would also exert a chilling effect upon the citizens of the Village in their exercise of First Amendment rights, and their important right to petition local government for the redress of real or fancied grievances. Accordingly, I find there is no just cause for delay pursuant to Rule 54(b), F.R.Civ.P., and that a final judgment should be filed at this time as to Sideman and her fellow citizens Doe, Roe and Hoe.

Nothing herein should be taken as suggesting plaintiffs have stated a claim upon which this Court will grant equitable and declaratory relief as against the remaining defendants. The parties have not briefed and the Court has not considered the applicability of the doctrine of abstention enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

Counsel for Mrs. Sideman shall settle a final judgment on five (5) days notice.