Luzer WEISS, Berisch Horowitz and Harry Berkovits, d/b/a B.Y.S. Associates, Plaintiffs,

v.

WILLOW TREE CIVIC ASSOCIATION, Robert B. Marcus, Mel Post, Harriet Ritto, Frank Brown, Robert Frankl, Joyce Riess, Leonard Ehrlich, Anne Rogers, Emil Kessler, Ted Feigenbaum, Marvin Silverstein, Arlene Friedman, Marvin Greenstein, Sandra Goldman, Richard Krutoff, Janice Marcus, Jane Feigenbaum, Hans Riess, Vera Brown, Dennis Kaplan, Sandy Schneiderman, Agatha Seife, Rhona Schneiderman, Stanley Jacobson, Howard Andrews, Ron Jason, Stephen Abrams, Joseph Sheehan, Harvey Pearlstein, Steven Hadermayer, Lee Kaiser, Renee Krutoff, Steve Litman, Martin Goldsmith, Sheila Goldsmith, Eugene R. Kummerle, and Mary Anne Levy, Defendants.

No. 78 Civ. 3471.

United States District Court, S. D. New York.

Feb. 8, 1979.

Greenbaum, Wolff & Ernst, New York City, for defendants; Norman Dorsen, Laurence Vogel, Marcia B. Paul, Jerry S. Chasen, New York City, of counsel.

Glickman & McAlevey, New City, N. Y., for plaintiffs; John F. McAlevey, New City, N. Y., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

What essentially was, and remains, a local zoning dispute is now before this Court upon a variety of claims charging violation of plaintiffs' federal statutory and constitutional rights. Plaintiffs, a congregation of Hasidic Jews who desire to establish a housing development on land they own in Ramapo, New York, claim that defendants, the Willow Tree Civic Association (the "Association") and its members have conspired and acted to harass and delay plaintiffs' application to the zoning authorities of Ramapo for a permit authorizing the proposed housing development. Plaintiffs assert that defendants' actions violate their federal civil rights protected by 42 U.S.C., sections 1982, 1983 and 1985(3) and, consequently, base jurisdiction upon 28 U.S.C., section 1343. The defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint on the ground that it fails on its face to state a claim upon which relief can be granted; alternatively, they ask the Court to abstain from exercising jurisdiction since plaintiffs' application is still pending before the Ramapo zoning authorities.

In 1977, plaintiffs, doing business as B.Y.S. Associates ("B.Y.S."), purchased a total of twenty-two acres of undeveloped land in the Town of Ramapo. Their intention was to build a residential housing development so that the members of their congregation, then living in the Williamsburgh area of Brooklyn, New York, could settle in Ramapo. Such a development required compliance with Ramapo's zoning procedures and regulations. The Town of Ramapo Code provides that a developer must file an application for a "special permit" with the Town Board (the Town's legislative body).[1] If the Town Board grants the special permit for "average density development," the developer then is required to submit to the Town's Planning Board two "sketch plats," or maps of the proposed

---

1. Ramapo Code § 46–13.1. The application is initially reviewed by the Administrative Assistant to the Boards and Commissions of the Town of Ramapo, and he submits his evaluation to the Town Clerk, who notices the application for a public hearing. Within thirty days of the hearing, the Town Board renders its decision whether to grant the special permit.

development.[2] The Planning Board, after a preliminary review by its Community Design Review Committee ("CDRC"), conducts a public hearing. If the Planning Board approves the sketch plats for average density development, the developer seeks approval of the use of average density from the Town Board and of a preliminary and final subdivision plat from the Planning Board.

Plaintiffs, in accordance with the prescribed procedures, on December 9, 1977, submitted their application for a special permit to the Town Board, which scheduled a hearing for its meeting on January 25, 1978. In the interim, according to plaintiffs' complaint, opposition to the B.Y.S. application arose in the community. A number of the defendants attended the Town Board meeting on January 25 and voiced opposition to the proposed development, allegedly raising many technical and procedural matters not ordinarily presented at such a hearing and making allusions to the "peculiar way of life of 'these people'" [plaintiffs].[3] Plaintiffs claim that the comments of the defendants then present were calculated "to intimidate the Town Board of the Town of Ramapo and to cause the Town Board to handle the application of plaintiffs differently than other applications are routinely handled . . . because of the race and religion of the applicants."[4] The Board unanimously granted the special permit but, because of the objections raised at the meeting, stipulated that the Planning Board give careful consideration to possible drainage, retention of water and silting problems in the area of the proposed development—matters which, according to the complaint, ordinarily were not included in the Board's resolutions.

On March 6, 1978, plaintiffs proceeded to the second stage of the procedure by filing two sketch plats (containing alternative layouts) with the Planning Board. The complaint further alleges that after the filing, defendants engaged in a concerted plan to delay the consideration of their application and to pressure town officials so that they would deny it. First, plaintiffs assert that in furtherance of the conspiracy, defendant Rhona Schneiderman filed a frivolous complaint with the New York State Department of Environmental Conservation, the purpose and effect of which was to delay the processing of the application of the B.Y.S. until the Department determined whether the plaintiffs' land contained sufficient "wetlands" to merit state regulation. Second, it is alleged that as part of the conspiracy, on May 12, 1978, four of the individual defendants filed an Article 78 state court proceeding against the Town and plaintiffs[5] that was wholly without merit and solely designed to harass plaintiffs and to frustrate their development plans and to cause them to abandon the project.

Finally, the complaint alleges that the defendants formalized their conspiracy by organizing the Association so as "to promote as astutely and covertly as possible under the guise of civic concern the conspiracy to deny the plaintiffs equal protection of the laws."[6] It is plaintiffs' contention that because of the clandestine as well as open pressure exerted by the Association before and during the Planning Board meeting of May 2, 1978, the Board rejected the sketch plat, not only delaying plaintiffs' application, but also imposing upon them the burden of another filing fee. B.Y.S. filed a second set of sketch plats, which

2. The minimum acreage required for a single family residence is 50,000 square feet. However, variances may be granted upon a concept of "average density development." One sketch plat depicts a hypothetical development meeting the minimum requirements (50,000 square feet) and the other depicts the proposed average density layout with building lots smaller than the minimum sized lots.

3. Complaint ⁋ 19. Plaintiffs allege that as a part of their religious practice and way of life

they dress and worship in a manner different from persons living in the area in which the property is located.

4. *Id.* ⁋⁋ 18, 19.

5. N.Y.Civ.Prac.Law & Rules §§ 7801–7806 ("Proceeding against Body or Officer").

6. Complaint ⁋ 29.

were also rejected by the Board after a hearing on July 25, at which defendants reiterated their earlier objections. Plaintiffs argue that the Board's decision was coerced by defendants' conspiracy and that community pressure and the presence of over 200 objectors at the meeting created "an atmosphere inimical to the rights and liberties of the plaintiffs."[7]

Defendants assert that their opposition to the B.Y.S. application stems solely from the swamp-like nature of plaintiffs' land and the already overburdened and unsatisfactory town drainage and sewage facilities, and that unless the zoning regulations were complied with the proposed development would create additional problems for the community. Furthermore, the Association argues that its good faith opposition is supported by two reports to the Planning Board by the CDRC; the reports found many problems with the sketch plats, including inadequacy of their drainage analysis, and concluded that "a great part of this land is unsuitable for development, as it is a swamp."[8] Therefore, the Planning Board's rejections of the sketch plats on May 2 and July 25, 1978, were, according to defendants, grounded upon the CDRC's findings, not any improper pressure brought to bear by defendants.

On July 28, 1978, plaintiffs, instead of submitting a third set of sketch plats, as was their right under the Ramapo zoning laws,[9] initiated the present action against the Association and its members. The complaint seeks, as against the members collectively and individually, punitive and compensatory damages, the latter based upon the extra administrative fees and professional or miscellaneous expenses incurred by the need to submit new sketch plats, the increased (mortgage and construction) cost resulting from the loss of a building season due to the delays in processing the subdivision application, and the affronts to plaintiffs' dignity as citizens because of the alleged bias and discrimination. Additionally, plaintiffs ask for an injunction dissolving the Association and prohibiting future conspiracies by the individual defendants against plaintiffs.

Defendants move the Court to dismiss the complaint and present three arguments in support of their position: first, that this Court should abstain from exercising jurisdiction and should remit plaintiffs to their legal and equitable remedies under state and local law; second, that the complaint fails to allege, and cannot in good faith allege, facts necessary to state a cause of action under the various civil rights statutes; and, third, that defendants' conduct as described in the complaint is wholly protected by the First Amendment and therefore is not actionable under federal law. This Court is not persuaded that it should abstain in the case,[10] but concludes that the

---

7. Id. ¶ 49.

8. Def.Exh. D; see Def.Exhs. E, F. The defendants submitted affidavits and exhibits in support of their motion that the Court abstain in this case. Those affidavits have not been considered on the defendants' motion to dismiss under Rule 12(b)(6).

9. Evidently they subsequently did, since an affidavit filed in support of the motion to abstain states that on November 28, 1978, the Planning Board granted plaintiffs' application for sketch plat approval, but that they made no further application to either the Town or the Planning Board for approval of either "clustering" or average density use, as would be required under the town zoning procedures.

10. "[T]here is substantial authority for the proposition that abstention is not favored in an equal protection, civil rights case brought as was this one under 42 U.S.C. § 1983 and 28 U.S.C. § 1343." Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 628, 94 S.Ct. 1323, 1337, 39 L.Ed.2d 630 (1974) (footnote omitted). None of the rationales for federal abstention applies to the circumstances of the present case. Abstention based on Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is not appropriate because no interpretation of a state statute is involved in this case that could moot the federal constitutional claims. See Prochaska v. Fediaczko, 458 F.Supp. 778 (W.D.Pa. 1978). Additionally, abstention based upon either Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is not mandated in this case because plaintiffs do not challenge the zoning procedures of the Town or sue officials to enjoin enforcement of those laws. Compare Ah-

complaint should be dismissed on the two substantive grounds urged upon it by defendants.

## I

On a defendant's motion to dismiss for failure to state a claim for which relief may be granted, the Court must accept the allegations of the complaint as true and should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [11] In broad terms, the complaint alleges that plaintiffs' constitutional rights to equal protection and treatment in the processing of the zoning application and to free travel were violated by a conspiracy engaged in by the defendants to delay and obstruct their application for a zoning permit and to influence public officials to deny it, and that the conspiracy was effectuated by defendants' attending meetings before official bodies, filing a groundless complaint with a state agency, instituting a meritless action in the state courts, forming a civic organization, placing an advertisement in a local paper, distributing handbills, and conducting public meetings for the purpose of arousing and encouraging opposition to the application. Based thereon, the complaint alleges violations of three provisions of the civil rights laws, sections 1982, 1983 and 1985(3) of Title 42, United States Code. The Court considers each claim separately.

## A

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." To state a claim for relief under section 1983, plaintiffs must allege, first, that defendants have deprived them of a right secured by the Constitution or laws of the United States, and, second, that defendants deprived them of that right acting under color of a state law. The Supreme Court recently held in *Flagg Brothers, Inc. v. Brooks*,[12] that for claims under the Fourteenth Amendment, both elements of section 1983 require state involvement. Where their main claim for relief is grounded upon Fourteenth Amendment rights, plaintiffs' injuries amount to constitutional "deprivations" only if effectuated or authorized by the State; and, in any event, the requirement that defendants act under "color of law" means that the deprivation must be effected through state involvement or participation, even where the underlying right is protected from both governmental and private interference.[13]

The complaint alleges no state or municipal activity and all the defendants are private parties. Indeed, the plaintiffs have not named any of the town officials as defendants or alleged co-conspirators. Plaintiffs, however, seek to satisfy the state

---

rensfeld v. Stephens, 528 F.2d 193 (7th Cir. 1974) and Fralin & Waldron, Inc. v. City of Martinsville, Virginia, 493 F.2d 481 (4th Cir. 1974) with Forest Hills Utility Co. v. City of Heath, Ohio, 539 F.2d 592, 595–96 (6th Cir. 1976) (abstaining from claims challenging the constitutionality of state takings procedures but taking jurisdiction over suit for damages against state officers) and Bergman v. Stein, 404 F.Supp. 287 (S.D.N.Y.1975).

**11.** Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted); see Cruz v. Beto, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); Weise v. Syracuse University, 522 F.2d 397 (2d Cir.

1975) (applying principle to suit pursuant to §§ 1983, 1985(3)).

**12.** 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

**13.** Id. at 155–56, 98 S.Ct. at 1733; see Adickes v. S.H. Kress Co., 398 U.S. 144, 150, 166–69, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (Harlan, J.); Civil Rights Cases, 109 U.S. 3, 13, 17–18, 3 S.Ct. 18, 27 L.Ed. 835 (1883); cf. Monell v. Department of Social Servs. of City of N.Y., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (municipalities are state actors under § 1983).

action requirement upon an argument that an active civic association has no purpose but to work in and through government, and "hence the use of a civic association as a vehicle for repression adequately satisfies the color of state law requirement." They argue further that there is a "symbiotic relationship" between a civic association and government, so that the Association's activities and those of its membership may be attributed to the town officials. The contention is far fetched and without substance. Plaintiffs' blunt, conclusory statement that the essence of "an active civic association is government involvement" is not factually accurate. Civic organizations are at times opposed to government and its officials. They are formed to present a particular point of view often counter to existing programs or to proposed state activity and to prod government officials with respect to policies or contemplated action. The defendant civic group was organized, among other reasons, to advance its position in opposition to plaintiffs' application for alleged noncompliance with zoning requirements and to remind public officials of their responsibility and duty to enforce existing zoning laws. No allegation of the complaint establishes a nexus between the civic group and the town officials.

To accept plaintiffs' contention upon the allegations of their complaint would be an unwarranted extension of the symbiotic relationship concept that when the State has so significantly insinuated itself into the affairs of a private person or entity it thereby becomes a co-participant in the claimed acts.[14] State action can only be effected by the act of the sovereign, not by a plethora of private power. "The focus is not on the private deprivation but on the state authorization."[15] Thus the Supreme Court has made it patently clear that state action will not be attributed to the private enterprise unless the government actually compels the private action[16] or unless it has vested in the private group the right to exercise a function that is an exclusive prerogative of the sovereign.[17] In the present case, there are no allegations—indeed such allegations could not in good faith be made—that the Town compelled the civic association to act as it did or gave it public powers that are the exclusive prerogative of sovereignty. If state action were not found in *Flagg Brothers*, where a warehouseman proposed to sell plaintiff's property to satisfy a lien for storage pursuant to the provisions of a state law authorizing such a sale, this case, with its complete

14. See *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

15. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 196, 98 S.Ct. 1729, 1744, 56 L.Ed.2d 185 (1978) (Stevens, J., dissenting); see H. Friendly, The Dartmouth College Case and the Public-Private Penumbra 17 (printed as supplement to 12 Tex. Q.No.2 (1969)) ("what is always vital to remember is that it is the *state's* conduct, whether action or inaction, not the *private* conduct, that gives rise to constitutional attack"). The majority opinion in *Flagg Brothers* concurred in this approach.

16. See *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164–65, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (state authorization of private commercial activity does not imbue that activity with state action); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (no state action where State has acquiesced in, but not ordered, private practice

challenged under Fourteenth Amendment); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970) ("a State is responsible for the . . . act of a private party when the State, by its law, has compelled the act"); *Evans v. Abney*, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970).

17. See *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158–60, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (enforcement of contractual obligations vested in private individuals not exclusive state function); *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976) (shopping mall does not take on status of sovereign simply because it may be the functional equivalent of town square); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (supplying utilities to citizens); *cf. generally Parks v. "Mr. Ford,"* 556 F.2d 132 (3d Cir. 1977) (en banc) (various opinions discussing issue and cases).

absence of any implied or express action or authorization on the part of any governmental unit, official or law, is *a fortiori.*

Plaintiffs argue, in the alternative, that the acts of defendants constitute state action because they are willful participants in joint activity with a municipal official, Herbert Reisman, to deprive plaintiffs of their constitutional rights.[18] This argument is fatally flawed by plaintiffs' failure to join Reisman as a defendant in this action. Moreover, based on the representations made in plaintiffs' brief and at oral argument, it is clear that the defect would not be rectified in the event plaintiffs applied for leave to amend the complaint to include Reisman as a defendant. To establish the requisite state involvement in the conspiracy, plaintiffs must allege with some particularity that the public defendant acting in his official capacity conspired with the private defendants to deny plaintiffs their rights; "vague or conclusory allegations" of official participation are not sufficient to withstand a motion to dismiss.[19] Plaintiffs contend only that Reisman is "an elected member of the Rockland County Legislature, a resident of the Willow Tree Civic Association area, an acknowledged member of the Willow Tree Civic Association, and . . . a salaried

(part time) political mentor and strategist for the present Superviser of the Town of Ramapo."[20] They do not assert that Reisman, as to the zoning application, acted in any official capacity to injure plaintiffs, and no charges have been made that any municipal official was improperly influenced by Reisman.[21] In sum, the plaintiffs have failed to set forth allegations required to establish public participation in the alleged private conspiracy. Since state action is an essential element in all section 1983 claims, plaintiffs' complaint fails to state a cause of action thereunder.

**B**

Section 1985(3) provides as follows:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having

---

18. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Fine v. City of N.Y.,* 529 F.2d 70, 75 (2d Cir. 1975); *Gras v. Stevens,* 415 F.Supp. 1148, 1152 (S.D.N.Y.1976) (three-judge court) (Friendly, J.); *Bergman v. Stein,* 404 F.Supp. 287 (S.D.N.Y.1975).

19. *Ellentuck v. Klein,* 570 F.2d 414 (2d Cir. 1978); *Powell v. Workmen's Compensation Bd.,* 327 F.2d 131, 137 (2d Cir. 1964); *Harris v. Ward,* 418 F.Supp. 660 (S.D.N.Y.1976). *Compare Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975) (remanding case for evidentiary hearing on state action question) *with Cohen v. Illinois Institute of Technology,* 524 F.2d 818, 827 (7th Cir. 1975) (Stevens, J.), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976) (*Weise* not applicable when plaintiff's own papers and arguments indicate that no state action exists as a matter of law).

20. Memorandum of Law in Support of the Sufficiency of the Complaint, at 9–10; *see* Reply

Affidavit of John McAlevey ¶ 13 (similar allegation).

21. Even if such charges could be made in good faith, they would face the obstacle that Reisman or town officials may be protected from federal scrutiny into their legislative motivations and, therefore, immune against damage liability under the civil rights statutes. *See Gillibeau v. City of Richmond,* 417 F.2d 426, 430 (9th Cir. 1968); *Kent Island Joint Venture v. Smith,* 452 F.Supp. 455, 458 (D.Md.1978); *Athanson v. Grasso,* 411 F.Supp. 1153, 1160 (D.Conn.1976). If so, they would be dismissed from the suit and state action negated, since "[p]rivate persons cannot be held liable for conspiracy under [§ 1983] if the other conspirators are state officials who are themselves immune to liability under the facts alleged." *Sykes v. California (Dep't of Motor Vehicles),* 497 F.2d 197, 202 (9th Cir. 1974); *see Reilly v. Doyle,* 483 F.2d 123 (2d Cir. 1973); *Baer v. Baer,* 450 F.Supp. 481, 488 (N.D.Cal.1978).

and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The Supreme Court in *Griffin v. Breckenridge*[22] held that to state a cause of action under section 1985(3), the complaint must allege that

the defendants did (1) "conspire . . ." (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." . . . [and] that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."[23]

The Court held that a section 1985(3) claim does not require as an element that defendants acted under color of law but does require that plaintiffs establish "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[24]

The complaint here meets the first and third elements of the *Griffin* test, and since plaintiffs are an ethnic and religious class, their allegations of discrimination are "class-based."[25] The issues, then, are whether defendants conspired for the purpose of depriving plaintiffs of rights or privileges of citizens of the United States and did deprive plaintiffs of such rights or privileges.[26] Plaintiffs argue that the conspiracy deprived them of (1) their right as national citizens to travel interstate, which is enforceable against private parties, and (2) the Fourteenth Amendment's guarantees of equal protection (equal treatment in the processing of their zoning application) which, plaintiffs argue, Congress extended to cover private conduct when it enacted section 1985(3).

The *Griffin* Court held that section 1985(3) provided a remedy for persons assaulted during their interstate travel on the public highways. *Griffin* was based upon the power vested in Congress under section two of the Thirteenth Amendment to create a statutory cause of action in favor of Negroes who were the victims of "conspiratorial, racially discriminatory private action" aimed to deprive them of their basic rights.[27] The Court also premised its hold-

---

**22.** 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

**23.** *Id.* at 102–03, 91 S.Ct. at 1798–9.

**24.** *Id.* at 102, 91 S.Ct. at 1798 (footnote omitted).

**25.** The prevailing test is that "[t]he 'class-based, invidiously discriminatory animus' referred to in *Griffin* relates to 'that kind of irrational and odious class discrimination akin to racial bias—such as discrimination based on national origin or religion.'" *Cartolano v. Tyrrell*, 421 F.Supp. 526, 532 (N.D.Ill.1976) (quoting *Arnold v. Tiffany*, 359 F.Supp. 1034, 1036 (C.D.Cal.), *aff'd*, 487 F.2d 216 (9th Cir. 1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974)); *see Murphy v. Mount Carmel High Sch.*, 543 F.2d 1189, 1192 n. 1 (7th Cir. 1976). Thus the courts that have addressed the question have held that discrimination based on religion is "class-based," *see Rankin v. Howard*, 457 F.Supp. 70 (D.Ariz. 1978); *Baer v. Baer*, 450 F.Supp. 481, 491 (N.D. Cal.1978) ("Moonies"); *Mandelkorn v. Patrick*, 359 F.Supp. 692, 697 (D.D.C.1973) ("Children

of God"); *cf. Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973) (Jews as ethnic group are a "class" for purposes of § 1985(3)).

**26.** 403 U.S. at 103, 91 S.Ct. at 1798–99. Since the statute speaks of "depriving . . . of the equal protection of the laws, or of equal privileges and immunities under the laws," the Court must look to legal authority (constitutional or statutory provisions) outside of § 1985(3) to define the substantive right for which § 1985(3) provides a remedy. *See Novotny v. Great Am. Fed. Sav. & Loan Ass'n*, 584 F.2d 1235, 1246 & n. 48, 1247 (3d Cir. 1978) (en banc), *cert. granted*, —— U.S. ——, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979) (citing cases).

**27.** 403 U.S. at 105, 91 S.Ct. at 1800. Section one of the Thirteenth Amendment provides that "[n]either slavery nor involuntary servitude . . . shall exist within the United States." Section two vests Congress with power to enforce the Amendment "by appropriate legislation."

ing upon the constitutional right of a citizen to travel in interstate commerce; this right " 'to pass freely from State to State' has been explicitly recognized as 'among the rights and privileges of National citizenship,' " and was held enforceable against private conspiracies.[28] Plaintiffs in the present case do not assert rights protected by the Thirteenth Amendment; insofar as they allege a violation of their right to travel, they can at most charge that they have been prevented from moving from Brooklyn, New York, to Ramapo, New York. Thus, their claim of violation of a right to travel is "intrastate," not "interstate." The former right, to intrastate travel, derives from the Due Process Clause's protection of personal liberty, not from the " 'rights and privileges of National citizenship.' " [29]

Accordingly, all of plaintiffs' claims for a section 1985(3) remedy—based on alleged violations of their rights of intrastate travel and equal protection and privileges—find their substantive foundation in the Fourteenth Amendment. The basic question is whether a claim under section 1985(3) that private persons conspired to deprive plaintiffs of their Fourteenth Amendment rights requires as an essential element state involvement. The *Griffin* Court, which, as already noted, geared its holding to section two of the Thirteenth Amendment, expressly reserved the questions whether section 1985(3) extends the Fourteenth Amendment's guarantees to private conduct absent state action, and whether Congress could do so pursuant to section five of that Amendment.[30] The issue, a close one, has divided Justices of the Supreme Court,[31] Courts of Appeals [32] and

**28.** 403 U.S. at 106, 91 S.Ct. at 1800 (quoting *Twining v. New Jersey*, 211 U.S. 78, 97, 29 S.Ct. 14, 53 L.Ed. 97 (1908)); *see United States v. Guest*, 383 U.S. 745, 757, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) ("The constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position fundamental to the concept of our Federal Union.") (quoted in *Shapiro v. Thompson*, 394 U.S. 618, 630, 89 S.Ct. 1322, 1329, 22 L.Ed.2d 600 (1969)); *Edwards v. California*, 314 U.S. 160, 181, 62 S.Ct. 164, 86 L.Ed. 119 (1941) (Douglas, J., concurring).

**29.** *See King v. New Rochelle Municipal Hous. Auth.*, 442 F.2d 646, 648 (2d Cir. 1971) (Waterman, J.); *Krzewinski v. Kugler*, 338 F.Supp. 492 (D.N.J.1972); 1 Emerson, Haber, and Dorsen's Political & Civil Rights in the United States 699 (N. Dorsen, P. Bender & B. Neuborne eds. 1976) ("A right to intrastate travel has little or no support in the Commerce Clause, the privileges of national citizenship . . . [but] must likely flow from considerations of personal liberty under the Due Process Clause . . . ."); *cf. Califano v. Torres*, 435 U.S. 1, 4 n. 6, 98 S.Ct. 906, 908, 55 L.Ed.2d 65 (1978) (per curiam) ("The constitutional right of interstate travel is virtually unqualified. . . . By contrast the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause . . . .") (quoted in *Califano v. Aznavorian*, —— U.S. ——, ——, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978)).

**30.** 403 U.S. at 107, 91 S.Ct. at 1801.

**31.** In interpreting 18 U.S.C. § 241, the criminal law analogue to 42 U.S.C. § 1985(3), a majority of the Supreme Court found that "the specific language of § 5 empowers the Congress to enact laws punishing all conspiracies—with or without state action—that interfere with Fourteenth Amendment rights." *United States v. Guest*, 383 U.S. 745, 762, 86 S.Ct. 1170, 1180, 16 L.Ed.2d 239 (1966) (Clark, J., concurring, joined by Black & Fortas, JJ.); *see id.* at 782, 86 S.Ct. at 1190 (Brennan, J., concurring and dissenting, joined by Warren, C. J., and Douglas, J.). *But cf. id.* at 753–60, 86 S.Ct. at 1175–1180 (opinion of the Court, per Stewart, J., relying on right to travel interstate); *id.* at 762, 86 S.Ct. at 1180 (Harlan, J., concurring and dissenting). Nonetheless, federal courts, including the *Griffin* Court, have continued to treat the question as an open one. *See, e. g., Lopez v. Arrowhead Ranches*, 523 F.2d 924, 927 n. 3 (9th Cir. 1975).

**32.** The Second Circuit has not resolved this issue, *see Weise v. Syracuse University*, 522 F.2d 397 (2d Cir. 1975). Other courts of appeals have held that state action is required, *see Bellamy v. Mason's Stores, Inc.* (Richmond), 508 F.2d 504 (4th Cir. 1974); *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972) (Stevens, J.); *cf. McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (en banc) (arguendo), but at least one circuit has squarely held to the contrary, *see Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971) (en banc), and other appellate opinions have suggested that § 1985(3) may extend certain Fourteenth Amendment guarantees against private conspiracies, *see Novotny v. Great Am. Fed.*

legal scholars and commentators.[33] Upon a consideration of the statutory language, the purpose and history of section 1985(3) and the various and conflicting opinions and viewpoints, this Court concludes that state action is required to sustain the claim where it rests upon Fourteenth Amendment considerations.

First, while it is true that section 1985(3) omits the color of law language contained in section 1983, it, like section 1983, requires that defendants' conduct cause a deprivation of plaintiffs' constitutional or statutory rights. The *Griffin* Court held that the absence of the color of law language makes certain private conspiracies actionable under section 1985(3), but the *Flagg Brothers* Court indicated that the deprivation language of section 1983 may be an independent basis for the requirement of state involvement, since "most rights secured by the Constitution are protected only against infringement by governments."[34] This view, drawing the state action requirement from the "deprivation" element, in addition to the "color of law" element, of section 1983, suggests that section 1985(3) claims grounded on the Due Process or Equal Protection Clauses of the Fourteenth Amendment must involve state action since the Fourteenth Amendment proscribes state, not private, deprivation of a citizen's rights.[35]

✻ ▉ Second, in interpreting section 1985(3), it must be presumed that Congress acted within its clear constitutional powers.[36] Although section five of the Fourteenth Amendment gives Congress broad power to enforce the Amendment, the grant of authority is circumscribed by the purpose of the Amendment itself, which is to protect against state action.[37] To read section 1985(3) as extending the guarantees of the Fourteenth Amendment to cover private conduct would require a clear, affirmative statement of congressional intent, because of inherent constitutional problems with such an extension;[38] there is no such

*Sav. & Loan Ass'n*, 584 F.2d 1235, 1257 & n. 55 (3d Cir. 1978) (en banc), *cert. granted*, —— U.S. ——, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979); *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973) (arguendo).

**33.** *Compare* Frantz, *Congressional Power to Enforce the Fourteenth Amendment against Private Acts*, 73 Yale L.J. 1353 (1964) (Congress has the power) *with* Note, *Federal Power to Regulate Private Discriminations: The Revival of the Reconstruction Era Amendments*, 74 Colum.L.Rev. 451, 516–17 (1974) (issue still unresolved in courts).

**34.** 436 U.S. at 156, 98 S.Ct. at 1733.

**35.** *Dombrowski v. Dowling*, 459 F.2d 190, 195 (7th Cir. 1972) (Stevens, J.) ("Thus, the state involvement aspects of § 1983 cases which are directed to the 'protected interests' rather than the 'proscribed conduct' portion of § 1983 are relevant in understanding the coverage of § 1985(3). . . . We think the § 1983 cases make it clear that [in an action based on rights under the Fourteenth Amendment] a 'state involvement' requirement must survive *Griffin*."); *see Abbott v. Moore Business Forms, Inc.*, 439 F.Supp. 643, 648 (D.N.H.1977); note 37 *infra*.

**36.** *United States v. Harris*, 106 U.S. 629, 635, 1 S.Ct. 601, 606, 27 L.Ed. 290 (1883) (courts in interpreting statutes should follow presumption that "Congress will pass no Act not within its

constitutional power"); *see Schneider v. Smith*, 390 U.S. 17, 26, 88 S.Ct. 682, 19 L.Ed.2d 799 (1968); *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342–44 (7th Cir. 1977), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1978) (interpreting § 1985(3)).

**37.** Section one of the Fourteenth Amendment provides: "nor shall any *State* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws" (emphasis supplied). Section five provides that "Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

**38.** *Compare Bellamy v. Mason's Stores, Inc. (Richmond)*, 508 F.2d 504, 508 (4th Cir. 1974) (Boreman, J., concurring) ("the Fourteenth Amendment empowers Congress to protect activities commonly considered to be federal rights *only* from *interference by governmental entities*") *and Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972) *with Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971) (en banc) *and Sale v. Waverly-Shell Rock Bd. of Educ.*, 390 F.Supp. 784, 787 (N.D.Iowa 1975) ("Congressional power to proscribe private forms of discrimination is also extended by § 5 of the Fourteenth Amendment where Congress finds the prohibition a necessary means to accomplish the enforcement of the Fourteenth Amendment.")

clear declaration of purpose in the language or history of the provision. Furthermore, an expansion of federal remedies to an indefinitely broad range of private activity would trench upon the jurisdiction of the state courts, perhaps impairing their " 'ability to function effectively in a federal system.' "[39] Just as the *Griffin* Court directed that section 1985(3) not become a "general federal tort law,"[40] one must hesitate to impute to Congress a far-reaching expansion of federal jurisdiction when it enacted section 1985(3).

■ Third, the available evidence illuminating Congress' intent indicates that section 1985(3) should only be read as a *remedial* statute that does not expand upon existing federal rights:

> No one has the absolute right to complain of every instance in which the action of others infringes upon his own behavior. It is only when that action is unlawful that an individual has legal cause to complain of his injury. Consequently, given the remedial nature of section 1985(3), we think it entirely clear that the statute was not designed to redress *every* interference with one's behavior, even when that behavior is the exercise of what we describe as a "fundamental right". Instead, we are persuaded that the object of a section 1985(3) conspiracy must be to deprive another of the enjoyment of legal rights by independently unlawful conduct.[41]

For example, Senator George Edmunds, the floor manager of the bill in the Senate, stated that "[a]ll civil suits which the Act authorizes, as every lawyer understands, are not based on it, they are based on the rights of the citizen. The Act only gives a remedy."[42] The Third Circuit in *Novotny v. Great American Federal Savings & Loan Ass'n*[43] has reviewed the pertinent legislative history and concluded that "§ 1985(3) may not be construed as a warrant to impose wide-ranging new duties upon private individuals in the interests of abstract equality."[44]

■ The foregoing considerations require the conclusion that section 1985(3) should not be interpreted to provide a remedy for claims grounded on the Fourteenth Amendment, absent state action. Since the plaintiffs in this case have not alleged, and clearly cannot allege, state involvement sufficient to establish state action, their section 1985(3) claim must be dismissed.

## C

■ Plaintiffs' final claim for relief rests upon 42 U.S.C., section 1982, which provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Because section 1982 has no requirement that violations must be under color of law and because Congress enacted the law pursuant to its powers to enforce the Thirteenth Amendment, whose protections apply against both public and private conduct, the Supreme Court held in *Jones v. Alfred H. Mayer Co.*[45] that section 1982 was enforceable against purely private discrimination.

The *Mayer* Court, however, also held that the statute "deals only with racial discrimination and does not address itself to discrimination on grounds of religion or na-

---

**39.** *National League of Cities v. Usery*, 426 U.S. 833, 852, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1976) (quoting *Fry v. United States*, 421 U.S. 542, 547 n.7, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975)).

**40.** 403 U.S. at 102, 91 S.Ct. at 1798.

**41.** *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 927 (5th Cir. 1977) (en banc) (footnotes omitted).

**42.** Congr. Globe, 42d Cong., 1st Sess. 568 (1871).

**43.** 584 F.2d 1235 (3d Cir. 1978) (en banc), *cert. granted*, —— U.S. ——, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979).

**44.** *Id.* at 1248.

**45.** 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968).

tional origin."[46] Thus the Supreme Court and the lower federal courts have only applied section 1982 to protect Negroes against racial animus; no case has extended the statute to cover the class of discrimination alleged in plaintiffs' complaint.[47] While it is true that plaintiffs charge that defendants' conduct was directed against them because of "race and religion," the complaint makes it clear that the hard core of their charge is anchored to their religion, manner of dress and life style.[48] Plaintiffs' gratuitous inclusion of the word "race" in an apparent effort to come within the *Mayer* ruling cannot down the true nature and essence of their complaint. Therefore, even if section 1982 did apply to zoning disputes, it does not afford plaintiffs in this case a cause of action upon which relief may be granted.

## II

The complaint's failure to allege the threshold requirements for relief under the civil rights laws would alone justify granting defendants' motion to dismiss. However, other considerations of more compelling force require dismissal of the complaint. A fair reading of its allegations makes it clear that plaintiffs' claims under sections 1982, 1983 and 1985(3) are inextricably bound up with the defendants' exercise of First Amendment rights of assembly, petition and association.

■ An overview of this case as pleaded by plaintiffs reveals, at most, a concerted effort by defendants to speak out against the proposed B.Y.S. development and to utilize various legal channels to oppose the application for a permit. Plaintiffs do not assert violence, threats, physical intimidation, libel, slander, fighting words, perjury, fraud, bribery, or any misrepresentation of law or facts on the part of defendants.[49] They contend that defendants assembled in large numbers to present their objections at public meetings, petitioned the executive and legislative authorities of the Town and State to oppose the development, and formed an association which distributed pamphlets and took a public position on an issue that was of great concern to them. Carried to its logical extreme, plaintiffs' position would question the "principle that the debate on public issues should be uninhibited, robust, and wide-open and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks."[50]

■ Plaintiffs purport to recognize defendants' First Amendment rights, but assert that nonetheless "the real motivation" for defendants' activities was to pressure town officials and harass plaintiffs, not to air public issues openly; thus, plaintiffs argue, defendants are not entitled to the im-

**46.** *Id.* at 413, 88 S.Ct. at 2189 (footnote omitted).

**47.** *See, e. g., Olzman v. Lake Hills Swim Club, Inc.*, 495 F.2d 1333 (2d Cir. 1974); *Lee v. Minnock*, 417 F.Supp. 436 (W.D.Pa.1976), aff'd, 556 F.2d 567 (3d Cir. 1977) (discrimination because of sex no basis for redress under § 1982); *Cahill v. Cedar County, Iowa*, 367 F.Supp. 39 (N.D.Iowa 1973) (three-judge court) (per curiam), aff'd mem., 419 U.S. 806, 95 S.Ct. 21, 42 L.Ed.2d 35 (1974); *cf. McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (interpreting § 1981, companion statute to § 1982, to outlaw private discrimination against whites purely on basis of race).

**48.** Memorandum of Law in Support of the Sufficiency of the Complaint, at 22, 25 & 26; Complaint *passim*. While the Court has, as previously noted, not considered any affidavit under

the Rule 12(b)(6) motion, the affidavit in support of the abstention motion states that of the 37 individual defendants, all but 4 are of the Jewish faith.

**49.** Certain means of expression are not given First Amendment protection. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (libel of private person); *California Motor Transport Co. v. Trucking, Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (bribery and misrepresentation in court); *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) (demonstrations threatening courthouse); *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) (obscenity); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (fighting words).

**50.** *New York Times v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

munity afforded by the First Amendment.[51] The Court cannot accept this position. The protection of the First Amendment does not depend on "motivation"; it depends on the nature of defendants' conduct.[52] Defendants' activities described in the complaint fall squarely under the protection of the First Amendment's guarantees of citizens' rights "peaceably to assemble and to petition the Government for a redress of grievances."

First, the complaint alleges that defendants sought to intimidate the Town Board and Planning Board by assembling in large numbers at public meetings and speaking against the B.Y.S. zoning application. Whatever its subjective impact on the officials of the Town, such action was nothing more than peaceable assembly petitioning municipal authorities for redress of grievances and is thereby entitled to First Amendment protection.[53] Thus in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*[54] the Supreme Court held that the right to petition governmental bodies that make and enforce the law is central to our representative democracy, because "these branches of the government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives."[55]

Similarly, the state lawsuit brought by four defendants and the complaint filed with the New York agency in charge of environmental conservation fall within the right to petition. In *California Motor Transport Co. v. Trucking Unlimited*[56] the Supreme Court extended the philosophy of *Noerr* to govern "the approach of citizens or groups of them to administrative agencies . . . and to courts . . . Certainly, the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition."[57] Finally, the formation of the Willow Tree Civic Association, even for the purpose of formally organizing the community against the plans of the plaintiffs, was constitutionally privileged.[58] To label defendants' asso-

---

**51.** Memorandum of Law in Support of the Sufficiency of the Complaint, at 13–15.

**52.** *See Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95–96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *Brandenburg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam); *United Mine Workers v. Pennington*, 381 U.S. 657, 670, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Terminiello v. Chicago*, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *Collin v. Smith*, 578 F.2d 1197 (7th Cir.), *cert. denied*, — U.S. —, 99 S.Ct. 291, 58 L.Ed.2d 264 (1978).

**53.** *See Aknin v. Phillips*, 404 F.Supp. 1150, 1153 (S.D.N.Y.1975), *aff'd mem.*, 538 F.2d 307 (2d Cir. 1976) (First Amendment right of citizens to complain, even officiously and clamorously, to municipal officials at public hearings and assemblies); *Board of Educ. of Scottsdale High Sch. Dist. No. 212 v. Scottsdale Educ. Ass'n*, 17 Ariz.App. 504, 498 P.2d 578 (1972) (right of public employees to petition school board); *Farmer v. Meeker*, 63 N.J.Super. 56, 163 A.2d 729 (1960) (upholding New Jersey zoning law protecting right to petition).

**54.** 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).

**55.** *Id.* at 137, 81 S.Ct. at 529.

**56.** 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

**57.** *Id.* at 510, 92 S.Ct. at 612; *see Stern v. United States Gypsum, Inc.*, 547 F.2d 1329 (7th Cir. 1977), *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1978) (filing complaint with Internal Revenue Service); *International Union UAW v. National Right to Work Legal Defense & Education Foundation, Inc.*, 433 F.Supp. 474, 482 (D.D.C.1977) (right to litigate); *Center for United Labor Action v. Consolidated Edison Co.*, 376 F.Supp. 699 (S.D.N.Y. 1974) (right to petition state administrative agencies); *People v. Siragusa*, 81 Misc.2d 368, 366 N.Y.S.2d 336 (Sup.Ct.1975) (right to bring civil suit against governmental unit).

**58.** The "right of association" has been read into the guarantees of the First Amendment by the Supreme Court, "because it promotes and may well be essential to the '[e]ffective advocacy of both public and private points of view, particularly controversial ones' that the First Amendment is designed to foster." *Runyon v. McCrary*, 427 U.S. 160, 175, 96 S.Ct. 2586, 2597, 49 L.Ed.2d 415 (1976) (quoting *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (Harlan, J.)); *see Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 233–34, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977); *Buckley v.*

ciation a "covert conspiracy" does not strip it of the guarantees of the First Amendment without some basis to support a claim that the Association sought to do more than lobby for a particular point of view. The defendants have every right to band together for the advancement of beliefs and ideas, however unpalatable the ideas or whatever the underlying motive.[59]

Plaintiffs respond by reliance upon the Supreme Court's holding in *California Motor Transport* that the right to petition is not without its limits. The complaint in that case alleged that the purpose of the conspiracy was to put the plaintiff out of business and to establish a monopoly. In furtherance of the conspiracy, defendants purportedly engaged in sham proceedings before administrative and judicial tribunals; the claim was that the "machinery of the agencies and the courts was effectively closed to respondents" by "a pattern of baseless, repetitive claims" that, if borne out at trial, would constitute abuse of the judicial process[60] and that the defendants became, in fact, the regulators of plaintiff's enterprise. The Court was of the view that if these allegations were true, the defendants had violated the compelling public policy of the antitrust laws and that their conduct abusing judicial procedures went beyond the ambit of the First Amendment protection.

The facts in the instant case are a far cry from the complaint upheld in *California Motor Transport* or, for that matter, the one dismissed in *Noerr.* In the former case the defendants alleged conduct that not only violated the antitrust laws, but effectively deprived plaintiffs of the machinery of the agencies and the courts. Plaintiffs here allege no facts that even approach those in *California Motor Transport.* Their allegations are that part of the means employed to impede their application for a zoning permit involves a single lawsuit against the Town and plaintiffs and an administrative inquiry initiated at the instigation of one of the defendants. Even if both were groundless, they hardly amount to grave abuse of those processes as to bar plaintiffs from responding to the claims made before those bodies. Indeed, plaintiffs do not allege that they were prevented from responding to the charges. Moreover, the complaint makes it clear that they were not denied access to the Planning Board which heard and considered their applications. The complaint's description of defendants' active lobbying before the Town Board and Planning Board, bodies making and enforcing the Ramapo zoning laws, pales into insignificance when compared with the railroad's publicity campaign depicted by the *Noerr* Court as "malicious in that its only purpose was to destroy the truckers as competitors, and fraudulent in that it was predicated upon the deceiving of those authorities through the use of the third-party technique."[61] Yet the complaint was dismissed by the Court in *Noerr*, as it should be dismissed here. Virtually all the conduct alleged against defendants falls squarely under *Noerr's* conclusion that the First Amendment protects "attempts to influence the passage or enforcement of laws," no matter how harmful their incidental impact on third parties may be.[62]

The actions attributed to the defendants upon which plaintiffs predicate their claims under sections 1982, 1983 and 1985(3) are protected by the First Amendment's guarantees of the rights to assemble, to petition their government and to associate. Accordingly, they cannot serve as the basis for liability under the civil rights statutes. An interpretation of sections 1982, 1983 and 1985(3) that would penalize such protected conduct would raise substantial constitutional questions. As the *Noerr* Court aptly stated: "The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly

---

*Valeo*, 424 U.S. 1, 24, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

**59.** *See* cases cited in note 52 *supra*.

**60.** 404 U.S. at 513, 92 S.Ct. at 613.

**61.** 365 U.S. at 133, 81 S.Ct. at 527.

**62.** *Id.* at 135, 81 S.Ct. at 528.

impute to Congress an intent to invade these freedoms."[63] This Court's reluctance to impute to Congress such a design is reinforced by the fact that allowing suits against private persons for conduct within the boundaries of the First Amendment would have a dangerous "chilling effect" on the exercise of those rights.[64] The Court holds that the statutes do not afford a remedy for injuries that may be sustained as an incident to private individuals' exercise of their fundamental rights to assemble, petition and associate for the purpose of influencing—openly and without force—officials of state and local governments.[65]

Plaintiffs by their pleading have sought to transmute a zoning dispute, still pending, into assorted claims of violation of federally protected constitutional rights. To uphold the complaint would, as Judge Waterman stated in a similar context, "be inviting every party to a state proceeding angered at delay to file a complaint in this court reciting the history of his state case and concluding with a general allegation of conspiracy."[66] Such was not the intendment or purpose of the civil rights acts.

Accordingly, the Court dismisses the complaint for failure to state a claim for which relief can be granted.

---

63. *Id.* at 138, 81 S.Ct. at 530.

64. Judge Brieant reached a similar conclusion in *Aknin v. Phillips,* 404 F.Supp. 1150, 1153 (S.D.N.Y.1975), *aff'd mem.,* 538 F.2d 307 (2d Cir. 1976): "To permit maintenance of this type of civil rights lawsuit against a private individual would under the circumstances and uncontested facts shown in this case, have an unfortunate and unjust chilling effect upon the exercise by members of the public of their First Amendment right to complain about a public nuisance."

65. *Accord, Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1343 (7th Cir. 1977) *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1978); *Aknin v. Phillips,* 404 F.Supp. 1150 (S.D.N.Y.1975), *aff'd mem.,* 538 F.2d 307 (2d Cir. 1976); *Bergman v. Stein,* 404 F.Supp. 287 (S.D.N.Y.1975).

66. *Powell v. Workmen's Compensation Bd.,* 327 F.2d 131, 137 (2d Cir. 1964).