Marvin H. GREENE and Country Lake Homes, Inc., Plaintiffs,

v.

The TOWN OF BLOOMING GROVE, Robert Muller, Individually and as Supervisor of the Town of Blooming Grove, Helen Duelk, Milton M. Tischler, Richard C. Morrisey, Susan B. Wells, Individually and as Members of the Town Board of Blooming Grove, Gerald N. Jacobowitz, Individually and as Attorney for the Town of Blooming Grove, Edmund A. Fares, Individually and as Engineer for the Town of Blooming Grove, their Agents, Assistants, Successors, Employees, and all Persons Acting in Concert or Cooperation with them or at their Direction or Under their Control, Defendants.

No. 80 Civ. 0474.

United States District Court, S. D. New York.

Feb. 7, 1980.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, Marvin Greene, is the owner of 1,000 acres of improved land in the Town of Blooming Grove ("the Town"), a bucolic community of fewer than 10,000 inhabitants situated in Orange County, New York. He seeks to promote on his property during the weekend of the Fourth of July, 1980, a massive, three-day rock concert to which he hopes and expects that 300,000 enthusiasts will flock.[1] He brought this action prospectively to enjoin the enforcement of Chapter 166 of the Municipal Code of Blooming Grove (the "Public Assemblies Law"), which requires the promoters of outdoor entertainment events attracting more than 250 people to make written application to the Town Board for a permit before holding such an event. All applicants are required by the Code to submit detailed maps and plans specifying all measures taken by them to assure the health, safety, and welfare of the audience. The plaintiff raises a variety of constitutional challenges to the statute—that it is unconstitutionally vague; that it unlawfully delegates absolute discretion over fundamental First Amendment rights to the Town Board; that it discriminates in favor of religious and political events, which are exempted from the Code's requirements, and against commercial events, which are not. The defendant answers each of these contentions, and also counters with the assertion that the issue of the constitutionality of the Public Assemblies Law is not properly before the Court because, as an initial matter, the plaintiff has not demonstrated compliance with the Town's zoning ordinance. We agree with the latter contention and on that basis dismiss the action.

The facts of the case with respect to the issue of zoning are not disputed. The parties agree that at the time of the hereinafter described events the Town was gov-

Colman & Liner, New York City, for plaintiffs; Leon Liner, Robert F. Liner, New York City, of counsel.

Jacobowitz & Gubits, Walden, N.Y., for defendants; John H. Thomas, Jr., Gerald A. Lennon, Walden, N.Y., of counsel.

1. The other plaintiff, Country Lake Homes, Inc., is a corporation wholly owned by Greene. For the sake of simplicity, the parties will be denominated as if there were but one plaintiff, Marvin Greene; and one defendant, the Town of Blooming Grove.

erned by an elaborate zoning ordinance, the text of which covers more than one hundred pages; the enforcement of these provisions is vested in the office of the Building Inspector, and ultimately, in the Town's duly appointed Board of Appeals. Under the ordinance all land in the Town is zoned for residential, commercial, or mixed (e. g., part residential, part commercial) use. Plaintiff's land is zoned as an R–30 District; it is intended to be used for a single-family detached dwelling. In 1951, when plaintiff Greene desired to erect a hotel, bungalows, and a country club on a portion of his land, he first sought and obtained from the Board of Appeals and pursuant to the zoning laws a variance permitting these nonconforming uses. Since that time Greene has sought and obtained various other permits for other, nonconforming uses of his property.

Despite counsel's claim to the contrary, the papers submitted unmistakably indicate that the instant dispute arose, at least initially, over an interpretation of the zoning ordinance, not the Municipal Code. Greene launched his rock concert venture by applying, in a one-paragraph letter dated September 11, 1979, for "a building permit to construct a stage, to be used in connection with a mass gathering." The letter was addressed to the Town Building Inspector, who administers the zoning ordinance, rather than to the Town Board, which is responsible for the enforcement of the Public Assemblies Law. The request was denied by letter of October 5, 1979 for a variety of reasons which included, inter alia, the fact that the proposed stage was a nonconforming use in an R–30 residential district; that the plaintiff had failed to submit for approval the detailed specifications and site plan required by the ordinance; and that he had failed to show adequate parking facilities for the masses who would be attracted to the premises by performers using the stage. It is also undisputed that plaintiff failed to appeal this adverse decision through the available administrative avenues to the Board of Appeals, and later failed to institute the Article 78 proceeding by which adverse determinations of municipal bodies are normally subjected to judicial review.[2]

Three days after Greene's application for a stage permit was rejected, the Town Board held a public hearing, pursuant to Chapter 166, to consider Greene's application for a permit under the Public Assemblies Law. Again, the parties agree that Greene failed to proffer any of the documents and specifications required by the Code as a precondition to the issuance of a permit.[3]

The application was denied on October 15, 1979 for several reasons. Foremost among these were the Town Board's contentions that it did not have before it an application at all, in that plaintiff had failed to submit the requisite documentation; and that he had failed to demonstrate compliance with the zoning laws, which is a prerequisite to the issuance of a mass-gathering permit under the Public Assemblies Law.

Thereafter, Greene made no further attempts to secure the permit, to obtain a variance by which he could have brought himself into compliance with the zoning ordinance,[4] or otherwise to meet the statutory requirements of either law. On January 24, 1980 plaintiff instituted this action, in which he contends, in addition to the aforementioned constitutional claims that the zoning ordinance may not be used to forbid the construction of *temporary* structures of the type he contemplated building; and that in any event, the ordinance may not be used to impinge upon his constitutional rights of expression and association. More generally, he contends that "any private landowner has a right to hold a public assembly on his land, regardless of zoning, as

---

2. *See generally* N.Y. C.P.L.R. §§ 7801–06 (McKinney's 1978).

3. Greene contends that he was entitled to a prospective indication of whether the application would be approved, and that it would be a hardship to require him to submit detailed plans for the venture if there was little chance of ultimate approval.

4. *See* Zoning Ordinance of the Town of Blooming Grove § 30.54 (1976).

long as the health, safety, morals and general welfare of the community [are] protected."

Apart from the fact that this broad declaration fails to acknowledge the role of the Board of Appeals as arbiter of the community's health, safety, morals and general welfare,[5] it ignores that long line of cases in which courts have repeatedly upheld over constitutional challenge the power of local communities to enact restrictive zoning laws pursuant to a comprehensive scheme. For more than fifty years courts have accorded great deference to local legislative judgment in enforcing the police powers.[6] A wide range of legislative purposes are deemed valid rationales for zoning laws, including the protection of aesthetic and scenic values [7] and the promotion of a quiet, peaceful environment.[8] Only recently, in upholding a local ordinance that limited the number of unrelated people permitted to occupy a dwelling in a residential area, the Supreme Court commented:

> A quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs. . . . The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clear air make the area a sanctuary for people.[9]

▮ It hardly need be noted that plaintiff's plans to erect a stage for the perform-

ers, towers from which to project amplified sound, and the inevitable concessions, sanitary and sleeping facilities needed to service an influx of 300,000 people could adversely affect the "quiet seclusion" of Blooming Grove, a community of fewer than 10,000 people. Moreover, the fact that plaintiff's land might generate a more profitable return, if it were free of restrictions does not diminish the community's power to so regulate it; in furtherance of the *general* welfare the community, through its representatives, may restrict or forbid some uses to which property might otherwise be put, even if the result is to depreciate its value to the owner.[10]

Here the plaintiff has utterly failed to advance any reason to doubt the validity of Blooming Grove's zoning ordinance; instead, his strategy has been to ignore it while concentrating his attack on the Public Assemblies Law. Yet the unrefuted facts indicate that the plaintiff seeks to convert, albeit temporarily, a property within a residential zone to commercial use, thereby introducing massive nonconforming changes to the character of the neighborhood. He sought the Town's endorsement of these changes without offering proper documentation, or any assurances that he would safeguard and preserve the character of the land and its environs. When his precipitate proposal was rejected by the Building Inspector, he made no further attempts to comply with the ordinance by completing

---

5. *Id.* §§ 30.51, 30.54(B)(3), and 30.2 (1976).

6. *See, e. g., Euclid v. Ambler Realty Co.,* 272 U.S. 365, 388, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926) ("If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control.") *See also Village of Belle Terre v. Boraas,* 416 U.S. 1, 8, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974).

7. *See, e. g., Steel Hill Dev., Inc. v. Town of Sanbornton,* 469 F.2d 956, 961 (1st Cir. 1972); *Stone v. City of Maitland,* 446 F.2d 83, 89–90 (5th Cir. 1971).

8. *See, e. g., Aknin v. Phillips,* 404 F.Supp. 1150, 1153 (S.D.N.Y.1975), *aff'd,* 538 F.2d 307 (2d Cir. 1976).

9. *Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974). *Cf. Berman v. Parker,* 348 U.S. 26, 32–33, 75 S.Ct. 98, 102, 99 L.Ed. 27 (1954) ("The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary.") (citation omitted)

10. *See Eastlake v. Forest City Enterprises, Inc.,* 426 U.S. 668, 679 n. 12, 96 S.Ct. 2358, 2364 n. 12, 49 L.Ed.2d 132 (1976); *City of St. Paul v. Chicago, St. Paul, Minneapolis & Omaha R.R. Co.,* 413 F.2d 762, 767 (8th Cir. 1969) (citing cases), *cert. denied,* 396 U.S. 985, 90 S.Ct. 478, 24 L.Ed.2d 449 (1969). *Cf. Berman v. Parker,* 348 U.S. 26, 32–33, 75 S.Ct. 98, 101–102, 99 L.Ed. 27 (1954).

his application properly, by appealing any adverse determination to the Board of Appeals, or by seeking, as he had done successfully in the past, a variance from the ordinance's requirements. After disregarding the available administrative remedies, he sought relief in this Court without raising any federal issue, or any claim at all, with respect to the zoning ordinance, other than the bald assertion that it ought not to apply to him.

In sum, we hold that the question of the validity of Chapter 166 is not properly before us, in that the plaintiff has failed either to make the prerequisite showing of compliance with the zoning ordinance or alternatively, to raise any federal claim against its validity. Even if plaintiff had raised a constitutional contention against the ordinance, we would hold that the Town officials might properly, and without contravening the requirements of the Constitution, conclude that plaintiff's plan to erect nonconforming structures on his property adversely affects the general welfare and on that basis deny him the necessary permits. Thus, we need not and do not reach the question whether the Public Assemblies Law is unconstitutional on its face.

The motion of the plaintiff for a preliminary injunction is denied; the defendant's motion to dismiss the complaint is granted.

So ordered.